ISAAC SANGER ET AL. v. MARY BUTLER ET AL.

Decided March 16, 1907.

**1.—Will—Construction.**

The provision in a will, "In case of the death of my wife, Mary Butler, and myself at the same time, I bequeath my estate as follows, viz., etc.," when construed in the light of the entire will and all the provisions therein, held to have reference, not to the act of dying, but to the state of being dead; not to the contingency of the testator and his wife dying at the same instant of time, but to the time when they would both be dead.

**2.—Same.**

The following rules should be observed in the construction of a will: (1) The intention of the testator expressed in the will, or clearly deducible therefrom, must prevail, if consistent with the rules of law. (2) The presumption is that the testator .intended to dispose of his whole estate. And (3) the law prefers a construction which will prevent a partial intestacy if such construction ·can reasonably be given.

Appeal from the Fourteenth District Court, Dallas County. Tried below before Hon. Thomas F. Nash.

*Victor H. Hexter* and *Coke & Coke,* for appellants.

*Holloway & Holloway,* for appellees.

TALBOT, ASSOCIATE JUSTICE.—This action was brought by Isaac Sanger and Alexander Sanger against Byron Truell, Mary Butler, Irene Butler, Caroline Latham, and John A. Latham, to recover for breach of a covenant of warranty, the sum of $1,575 and interest. The defendants answered, and the cause coming on for trial was heard by the court without a jury and resulted in a judgment for defendants from which the plaintiffs have appealed to this court.

The facts are as follows: On December 30, 1902, the defendants herein, in consideration of the sum of $12,500, paid by the plaintiffs and Cornelia Sanger, sold and conveyed unto the plaintiffs and Cornelia Sanger, by deed of said·date, the real estate described in the petition herein. The defendants, Mary Butler, Caroline Latham, joined by her husband, John Latham, Marcus Butler and Irene Butler, executed said deed as surviving wife and children of Frederick Butler, deceased, and as devisees under his will. Prior to the death of the said Frederick Butler said property was owned by Frederick Butler and Byron Truell, Butler owning three-fourths and Truell one-fourth. The deed so executed by defendants contained the usual warranty clause as .follows: "And we do hereby bind ourselves, our heirs, executors and administrators, to warrant and forever defend, all and singular, the said premises unto said Isaac Sanger, Alex Sanger and Cornelia Sanger, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof." The grantees in said deed then took possession of said property, and have ever since remained in possession of the same. On the 18th day of April, 1903, Cornelia Sanger conveyed to plaintiffs by a special warranty deed of said date her interest in said land, whereby the plaintiffs became and are now the sole owners of the title acquired through said deed of December 30, 1902. The will of Frederick Butler, deceased, through which the defendants, other than Byron Truell, claimed title to the land, was dated on the 12th day of June, 1895, and is as follows: "Know all men by these presents, that I, Frederick Butler, of the city of Lawrence, county of Essex, and Commonwealth of Massachusetts, being in fairly good health and of sound and disposing mind and memory, do make and publish this my will and testament.

"First. I do hereby constitute and appoint my sons, Franklin and Marcus Butler, and the survivors of them, the executors and executor

of this my last will and testament, and direct my said executors to pay all my just debts and funeral expenses out of my estate, and I desire that my executors, or either of them, may be exempt from furnishing sureties on their bonds, as such executors, as provided by law.

"Second. I give and devise to my beloved wife, Mary Butler, all of my estate both real and personal to have and to hold and enjoy the same during the term of her natural life.

"Third. In case of the death of my wife, Mary Butler, and myself at the same time, I bequeath my estate as follows, viz.: To each of the surviving children of my son, the late Albert E. Butler, and Gertrude E. Butler, I give and devise the sum of fifteen hundred dollars, the said money to be put in the hands of Hon. Byron Truell, to be held by him in trust until the said children shall become of age. The balance of my estate both real and personal to be divided as follows, viz.: To my daughter, Mrs. John A. Latham, I bequeath one-quarter, to my son Marcus I bequeath one-quarter, and to my daughter Irene I bequeath one-half, with the understanding that one-half of the portion bequeathed to Irene be used for the care and support of the children of my son Franklin Butler.

"Fourth. I particularly request that the portion of my estate to my daughter, Mrs. John A. Latham, shall be for her and her children free from the control of her husband. This request also applies to the portion bequeathed to my daughter, Irene Butler, if she should marry.

"In testimony, I, the said Frederick Butler, have to this my last will and testament subscribed my name, this twelfth day of June in the year of our Lord, one thousand eight hundred and ninety-five.

"Frederick Butler. (Seal.)

"Signed, sealed, published and declared by the said Frederick Butler as and for his last will and testament, in the presence of us who at his request and in his presence and in the presence of each other have subscribed our names as witnesses hereto.

John Barrington,<br>Joseph Howarth,<br>Frank A. Hiscox."

Frederick Butler died at his home in Massachusetts on June 14, 1899, and his will was duly probated in that State, and a copy of the same and the proceedings probating the same, certified as required by the statutes of the State of Texas, was recorded in the deed records of Dallas County, Texas. There remains in the hands of the proper trustees of the estate in Massachusetts sufficient funds to pay the said legacies to said minor grandchildren. Byron S. Butler, Gertrude M. Butler and Marion A. Butler, are minors and are grandchildren of Frederick Butler, deceased, being children of Albert E. Butler, a deceased son of said Frederick Butler, deceased, and these persons have not and never have had any legally appointed guardian in the State of Texas. On the 1st day of June, 1903, plaintiffs instituted a suit in the District Court of the Fourteenth Judicial District of Texas, styled Sanger Brothers v. Joseph Bourgeois et. al., and numbered 22,524 on

the docket of said court. Said suit being so instituted for the purpose of clearing the title to said land by reason of a cloud resting thereon, caused by possible outstanding interests of defendants, Joseph Bourgeois and the unknown heirs of Lux Bourgeois, deceased, and of the minor defendants, the said Byron S. Butler, Gertrude M. Butler, Marion A. Butler, as heirs of Frederick Butler, deceased, who were then respectively seventeen, fifteen and twelve years of age; the plaintiffs therein praying for a, construction of the will of Frederick Butler, and that said clouds be removed, and that in the alternative, if the court should hold that said minors have an interest in the land, then said land be partitioned between said plaintiffs and said minor defendants. None of the defendants herein were parties to said suit. The said minor defendants in said cause number 22,524, residents of Massachusetts, were duly cited therein by publication, and were represented in said cause by guardian ad litem, appointed therein by the court. By a judgment entered in said cause number 22,524, on March 16, 1904, it was adjudged that the said minor defendants, as grandchildren and heirs of Frederick Butler, deceased, were entitled to three-twentieths interest in and to said land, subject to the life state of Mary Butler, and the plaintiffs herein to seventeen-twentieths interest therein, in addition to being the owners of the life interest of Mary Butler in said land, and ordering a partition of the said land between the plaintiffs and said minors, Byron S. Butler, Gertrude M. Butler and Marion A. Butler. Thereafter, under orders entered in said cause number 22,524, the land so conveyed to plaintiffs was offered for sale by H. Y. Lively, special commissioner, at public outcry, for the purpose of partition, and sold to plaintiffs herein for the sum of $12,500. On the 13th day of June, 1904, the sale made by the Special Commissioner was approved and a deed ordered executed and delivered to plaintiffs on the payment of the sum of $1,575, which amount was duly paid by the plaintiffs into the registry of the court; and which amount they seek to recover in this suit; the life interest of said Mary Butler in said three-twentieths of said $12,500 being estimated by the court at $300. The value of the interest of said minors, Byron S. Butler, Gertrude M. Butler and Marion A. Butler, in said land, as found by the court, to wit, $1,575, is the fair and proportionate value of the interest of said parties as heirs of Frederick Butler, if they had any such interest therein. No appeal or writ of error was prosecuted in said cause number 22,524.

The property was purchased by the plaintiffs with a view of erecting thereon a warehouse to cost not less than $90,000, or, if not to be so used, to again sell said property; of this intent the defendants knew nothing.

Albert E. Butler, the father of the said Byron S., Gertrude M. and Marion A. Butler, died March 20, 1895. He was heavily in debt and his assets very limited. Frederick Butler, whose financial condition was good, made, prior to the date of his will, several gifts or advances to Albert E. Butler amounting to between $9,000 and $10,000. And after the death of the said Albert E. Butler, the said Frederick Butler paid a considerable portion of his debts amounting to between $9,000 and $10,000.

The trial court filed no conclusions of fact or law, nor does the

judgment rendered recite any ground upon which it was based. In this attitude of the record, if for any reason the judgment is correct it will be presumed that the court's action was influenced thereby and it must be affirmed. There was involved in the court below and is involved in this court a construction of Frederick Butler's will, which in the view we take of it, disposes of the case without regard to any other question raised. Upon this phase of the case counsel for appellants have failed to express themselves, and we are without the benefit of their views. They assume in their brief that the trial court held that according to a proper construction of Frederick Butler's will, the minor children of Albert E. Butler, deceased, did not take under it as devisees, but inherited from their said grandfather a three-twentieths interest in the property described in appellants' petition, subject to the life estate of Mary Butler, his surviving widow. This assumption does not seem to be agreed to by counsel for appellees, and does not find support, by any expression to that effect by the court, in the record.

The question is, Was there a failure of title as to any portion of the land conveyed by the appellees to the appellants? The answer to this question depends upon the proper construction of Frederick Butler's will and especially of the third clause, which, as has been seen, reads: "In case of the death of my wife, Mary Butler, and myself at the same time, I bequeath my estate as follows, viz.; To each of the surviving children of my son, the late Albert E. Butler, and Gertrude E. Butler, I give and devise the sum of fifteen hundred dollars, the said money to be put in the hands of Hon. Byron Truell, to be held by him in trust until the said children shall become of age. The balance of my estate both real and personal to be divided as follows, viz.: To my daughter, Mrs. John A. Latham, I bequeath one-quarter, to my son Marcus I bequeath one-quarter, and to my daughter Irene I bequeath one-half, with the understanding that one-half of the portion bequeathed to Irene be used for the care and support of the children of my son Franklin Butler." It is contended by appellees' counsel, in an exhaustive brief filed in this court, and whose line of argument will be largely adopted and followed in this opinion, that this clause of the will does not import a contingency upon which the subsequent devises and bequests shall take effect, but that its purport is to indicate the future state of facts *when* they shall take effect; and that the word "death" as so used, means "the state or condition of being dead," and not the "act of dying." That is, the words should be construed to read: "In case of my wife, Mary Butler, and myself both being dead at the same time (without regard to who shall have died first) I bequeath my estate as follows," etc. Frederick Butler and his wife did not die at the same time, and if the clause of the will under consideration means literally that only in the event of the happening of such a contingency was the estate of the said Butler bequeathed to his children and grandchildren as therein provided, then as said contingency did not happen, the will simply appoints executors, provides for the payments of debts, gives a life estate to the widow and leaves the testator intestate as to the remainder of his estate, with no provision whatever for said children and grandchildren. In that case the three grandchildren, Gertrude M., Byron S. and Marion Butler, would take by inheritance three-twentieths of the land in ques-

tion, subject to the life estate of Mrs. Mary Butler, and to that extent there would be a failure of title. On the other hand if the construction insisted upon by the appellees be the true one, then there is no intestacy, the will is in full force in all of its terms; the said grandchildren are each entitled to a legacy of fifteen hundred dollars, they have no interest in the land, and consequently there is no failure of title whatever.

Now, the following are familiar rules in the construction of a will: (1) The intention of the testator expressed in the will or clearly deducible therefrom, must prevail, if consistent with the rules of law; (2) The presumption is that the testator intended to dispose of his whole estate. (3) The law prefers a construction which will prevent a partial intestacy, if such construction can reasonably be given. (Young W. C. Home v. French, 187 U. S., 401; Robards v. Brown (Mo. Sup.), 67 S. W. Rep., 245.) To the establishment of these rules expressions in various forms will be found in the test books and adjudicated cases. In Metcalf v. Framingham Parish, 128 Mass., 370, it is said: "If a reading of the whole will produce a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court must supply the defect by implication, and so mould the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has, on the whole will, sufficiently declared." This language is quoted with approval in the case of Robison v. Portland Orphans Asylum, 123 U. S., 702. In Meiners v. Meiners (Mo. Sup.), 78 S. W. Rep., 795, the will gave legacies to three older sons and then devised to three younger sons "the undivided one-third interest in all my real estate," describing it. It was held that the devise of the realty was of an undivided *one-third to each* of the younger sons and not an undivided one-third to the three jointly. Valiant, judge, delivering the opinion of the court, said: "When a man makes a will that is fairly susceptible of being construed into a testamentary disposition of his whole estate, it will be so construed, in preference to construing it to be a case of partial intestacy . . . His intention is what we are seeking, and, when we find it, we must give it effect, even if we have to supply a word, provided the word does no violence to the text, but only clears the doubtful meaning." Mr. Redfield in his work on the Law of Wills, volume 2, 616, says: "The idea of any one deliberately proposing to die testate as to a portion of his estate and intestate as to another portion is so unusual in the history of testamentary disposition, as to justify almost any construction to escape from it." . . . Again he says: "No estate will be held contingent unless very decisive terms of contingency are used in the will, or it is necessary to hold the same contingent to carry out the provisions and implications of the will."

Bearing these well established principles in mind let us endeavor to ascertain the intent of Frederick Butler as manifested by the words that he has used, taking those words in connection with the entire will. As will be observed, the particular words to be construed are: "In case of" death, and "at the same time," "death" being perhaps the controlling one. Doubtless the word "death" in the majority of instances in which it is ordinarily employed means "the act of dying." This, however, we regard as a restrictive meaning. In its broader sense the word "death"

imports "the state or condition of being dead." The Encyclopoedic Dictionary, among others, gives the following definitions of it: "The state of being dead;" "the act or state of dying;" "the state or condition of the dead." The Century Dictionary defines death as "cessation of life;" "that state of a being, animal or vegetable, in which there is a total and permanent cessation of all the vital functions." Of the many examples which might be given of the use of the word as signifying "the state of being dead" we cite the following from those collated in appellees' brief: "And in this borrowed likeness of shrunken death thou shalt continue two and forty hours." Romeo and Juliet, IV, 1. "For which, they say, your spirits oft walk in death." Hamlet II. "Ay, there's the rub; for in that sleep of death what dreams may come." Hamlet, III, 1. "So many of us as were baptized into Jesus Christ, were baptized into his death." Rom. 7-24. "For in death there is no rememberance of Thee; in the grave who shall give Thee thanks." Ps. 6-5.

In which sense did Frederick Butler use the word "death" in the sentence found in the third clause of his will, reading: "In case of the death of my wife, Mary Butler, and myself at the same time, I bequeath my estate as follows?" Manifestly we think in its broader sense, signifying the state or condition of being dead. If in the restrictive sense, importing "the act or state of dying," then he must have intended; (1) to leave his estate entirely undisposed of, beyond the life estate to the widow, except upon the contingency that he and his wife should die at the same time; (2) to make the subsequent devises and bequests, in favor of his children and grandchildren, depend upon such an improbable contingency, as that there was not one chance in a million that it would ever happen; (3) to give to his son Franklin nothing if the improbable contingency happened, but if it did not, then he should take his full share of the estate and his children nothing; (4) that Mrs. Latham's share, in the event of such contingency, should be protected from the control of her husband, otherwise the husband would enjoy the usual marital control; (5) that the three children of the deceased son, Albert, to whom he had made advances, should receive legacies of $1,500 each in the event of the happening of the improbable contingency, but should receive by inheritance the said Albert's entire share in any other event. Clearly, we think, no such apparent results were contemplated or intended by Frederick Butler in the drafting of his will. No reason suggests itself, nor, indeed, do we think a rational one could be imagined why the testator should have made his division of the estate between his children and grandchildren depend on his wife and himself dying at the same time. That he intended to hang on such an improbable contingency, a disposition of his entire estate by which he makes special provision for each branch of his descendants, is unreasonable if not inconceivable. "No possible motive is suggested for such a peculiar intentional disposal of the property as would result from that interpretation of the language" of his will.

On the other hand if Frederick Butler used the word "death" in that sense which imports "the state of being dead" then the devises and bequests to his children and grandchildren depend on no condition or contingency, and his will is clearly susceptible of being construed into a

testamentary disposition of his entire estate. That such was the meaning in which the word was used when taken in connection with other provisions of the will, with the manifest purpose of the testator Butler, and with the presumption of law against contingencies, partial intestacy, etc., admits of little or no doubt. Certainly Frederick Butler executed his will in good faith, with the sincere purpose and desire that the devises and bequests made therein should take effect, and it must be assumed that the language employed in the construction thereof was used in that sense which would accomplish that purpose, and not in a sense which was more than likely to defeat it. Evidently then, when he used the word death in reference to himself and his wife, to whom he had just bequeathed in the preceding clause of his will his entire estate for life, he simply had in mind the time when both should be dead, that permanent condition upon the accomplishment of which the devises and bequests to his children and grandchildren would become effective, and not the improbable contingency of both dying at the same time, the nonhappening of which would thwart his cherished purpose, and leave the remainder of his estate, after the life estate, to be devolved by the statute of descent, a condition which he evidently intended to prevent. It is a well established rule that in order to prevent the estate from passing partly by will and partly by descent, words may be supplied, transposed or changed in the will; and surely when a word is used which is susceptible of two meanings, one of which may defeat the plain intention of the testator, and the other will preserve and carry it into effect, the courts will attach to it the latter meaning. Such to our minds was the intent of Frederick Butler when he spoke of the death of himself and his wife.

What then did he have in mind when he used the words "at the same time" in connection with the word "death?" Clearly we think the time when both he and his wife should be dead, and not the act of his wife and himself dying simultaneously as an intended contingency upon which the devises to his children and grandchildren should be made to depend. In appointing executors and providing for the payment of his debts in the first clause of his will he contemplated a future time when he should be dead, and simply provided for what should be done when he was in that state. In the second clause in which he gives a life estate to his widow, he contemplates himself being dead and his wife then living, and makes full provision for her during her natural life. Now then, having contemplated his own death and having provided for it, and having contemplated his wife surviving him and having provided for that, he naturally comes next, in the third clause, to provide for that time when both shall be dead, when both shall be in the condition of death *at the same time* and his children and grandchildren then become the objects of his bounty, and the residue of his estate, after the termination of the life estate of his widow, is bequeathed to them. · That Frederick Butler contemplated that his wife would survive him, that is, that both would not die "at the same time" is manifest from the second clause of his will wherein he provides for the time of her widowhood. He knew, however, the time must come when both would be dead, and it is perfectly natural, and consistent with the usual conduct of men in such matters, that just at such a time he would make the devises and

bequests to his children and grandchildren take effect. Anticipating the happening of these events he deems it important and provides in the fourth clause of his will that the portions of his estate bequeathed to his daughters should be free from the control of their husbands. It is true a man might make such devises and bequests depend upon the possible event that he and his wife should die at the same time, but it is extremely unlikely that he would do so. So rare are the instances of a man and wife dying in the same calamity or at the same time no man is apt to think such a thing would occur. And of all the wills that have ever been known to the courts or to the profession, not one, so far as we have any knowledge, has ever provided for or contemplated such a contingency. If, however, a man at the time of making his will had before his mind the possibility of such a contingency, still we can not conceive of such a contingency making any radical difference in the disposition of his estate, especially in the provision for his children and grandchildren, after the wife is gone, if such provision was made in good faith with the desire that it should take effect. Again, if a man should think of and provide for such unusual contingency, he certainly would also provide for the alternative contingency. Mr. Redfield says: "The fact that the testator makes no provision in regard to the disposition of the estate, provided the event named for the devisee coming into full possession never occurs, shows very satisfactorily that it was not in the mind of the testator to create a contingent estate, since the very fact of doing so would suggest the propriety of some provision for the disposition of the estate, in the event of that contingency not happening, as no one making a will would purposely leave property undisposed of."

No case directly in point has been cited and we have found none; but the views expressed are in harmony with what we think the testator, Butler, intended, with the presumption of law against contingencies and intestacy or partial intestacy, and is believed to be in accord with analogous cases and the trend of judicial sentiment and the decisions generally upon the construction of wills. (Loving v. Rainey, 36 S. W. Rep., 335; Eaton v. Brown, 193 U. S., 411; Kenaday v. Sinnott, 179 U. S., 606; Trusty v. Trusty, 59 S. W. Rep., 1094; In re Estate of Pierce, 56 Wis., 560; Appeal of Ryon (Pa.), 17 Atl. Rep., 23; Hayward v. Loper (Ill.), 35 N. E. Rep., 225; Perry v. Perry (Ky.), 60 S. W. Rep., 855; Truesdell v. Darnall (Ky.), 73 S. W. Rep., 755; Wilder v. Wilder (Ky.), 86 S. W. Rep., 557; Smith v. Chadwick (Ala.), 20 So. Rep., 436; Avelyn v. Ward, 1 Vesey, 420; 1 Jarman, Wills, 730, 743, 767; 2 Underhill, Wills, sec. 862.)

Our conclusion is that Gertrude M., Byron S., and Marion A. Butler take under the will of their grandfather the bequests made to them; that they have no interest in the lands of his estate, and that, therefore, there is no failure of title whatever of the land conveyed by appellees to appellants. This view of the matter disposes of the appeal and it becomes unnecessary for us to consider and determine the question, whether or not appellants were estopped to recover on the ground that they had invited an attack upon their title by bringing suit to remove cloud and thereby voluntarily caused themselves to be evicted.

The judgment of the court below, for reasons indicated, is affirmed.

*Affirmed.*

Writ of error refused.