### LEWIS v. WALKER et al.

(Court of Civil Appeals of Texas. San Antonio. Nov. 5, 1913. Rehearing Denied Jan. 7, 1914.)

WILLS (§ 630*)—CONSTRUCTION—INTESTACY.

Testator, having an unmarried daughter, M., who was of weak mind, and plaintiff, another daughter, who had displeased him by her marriage, bequeathed to plaintiff $50 and devised the residue of his estate, except such $50, to trustees to apply the income to M.'s support, not exceeding a specified sum per month, and then declared that, if M. died leaving surviving a child or children, testator bequeathed to such child or children the whole of his fund remaining in the hands of the trustees, and if she died leaving a husband, but no children, surviving her, testator bequeathed to such husband $1,000, and all the residue of his property to the children of K., his brother. *Held*, that the bequest to M.'s husband, should there be one, should be construed, not as a condition, on the happening of which the estate was to vest in K.'s children, but as a limitation which, to the extent of $1,000, would diminish the estate so given if the event happened; and hence the fact that M. died without having been married and without issue did not create an intestacy as to the remainder of testator's estate so as to entitle plaintiff to share therein.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1464–1480, 1486, 1487; Dec. Dig. § 630.*]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action by Annie L. Lewis against John C. Walker, as executor, and others for the construction of the will of Charles Nolan, deceased. Decree for defendants, and plaintiff appeals. Affirmed.

Van Velzer & Lewis and Gillaspie & Crawford, all of Houston, and Kleberg & Neethe, of Galveston, for appellant. Taliaferro & Armstrong, of Bryan, and Jas. B. & Chas. J. Stubbs, of Galveston, for appellees.

MOURSUND, J. This suit was instituted by John C. Walker, sole surviving executor under the will of Charles Nolan, deceased, against James O. Kernole, J. C. Kernole, Mrs. Willie D. Wilson, and her husband, Ben C. Wilson, Charles H. Knoblaugh, minor, and Charles F. Knoblaugh, guardian of said minor, Annie L. Lewis, a widow, and Wilhelmina C. Nolan, the widow of Charles Nolan, praying for a construction of the will of Charles Nolan, which reads as follows:

"The State of Texas, County of Galveston:

"I, Charles Nolan, a resident of said state and county, being of sound mind and body, but knowing the uncertainty of life do hereby make this my last will and testament.

"(1) I hereby nominate and appoint as the

executors of this my will, and also as trustees to carry out and execute the trusts herein provided and created, John C. Walker of Galveston, Charles Allen of Harris county and H. Kernole of Bryan, Brazos county, Texas, and direct that they shall not be required to give bond on security.

"(2) I direct that after my death all my property and shares in property real personal shall be kept undivided and together with the community share of my wife Williamina Nolan while she may remain a widow, but in case my said wife should marry again, I direct that a division of all the community property of my said wife and myself, shall be divided at once and that all my share of the same shall be immediately vested in my said trustees who shall hold the same in trust, which trusts shall be executed in accordance with the provisions of this my will.

"(3) In case my wife should desire to sell any portion or portions of the lands of the community estate during her widowhood, I direct that she shall first submit the terms of such proposed sale or sales to my executors, or to those of them surviving, and if the said executors agree that such a sale or sales are for an adequate price, they shall join with my said wife in a deed or deeds, so as to make full and perfect title to the purchaser or purchasers of said property, and my share of the proceeds of all such sales shall be received by my executors and trustees, and by them held in trust as by this my will provided.

"(4) I direct that my executors shall employ a competent man to manage and preserve my stock interests and I hereby authorize and empower my wife, Williamina Nolan, to sell and dispose of all steers and other cattle proper and suitable for sale on the market, without consulting my executors, such sales not to authorize her to dispose of cattle necessary for keeping up the stock. My said wife shall keep and render accounts to my executors of all such sales, and she shall immediately upon making any sale of cattle, pay over to my executors my share of the net proceeds of sale which money shall be held by my said executors and trustees upon the trusts herein provided.

"(5) I direct that my executors shall make annual divisions of the net income of the community estate of my said wife and myself, so long as said community estate may remain undivided my said wife to take her share of the same, and I direct that my executors and trustees shall take and hold my share of such income, upon the trusts herein provided and created.

"(6) I devise, give and bequeath to my said trustees, John C. Walker, Charles Allen and H. Kernole to be held in trust all my real and personal property, excepting fifty dollars, said property to include all that I now possess consisting of lands and tenements, horses, cattle, money in bank, stocks, bonds and all other property whatsoever which I may have or be entitled to at the time of my death, and I will and direct that my said executors shall take possession of the same upon the death of my wife, or whenever a division of the said community property may be made. My said trustees shall keep in bank or invested in the safest securities to be obtained all money coming into their hands from the sale of any property, or income of any description, and they shall hold the same in trust during the life of my daughter, Mary Virginia Nolan, and out of such trust funds they shall pay to my said daughter, Mary Virginia Nolan, monthly, a sum necessary for her support not to exceed seventy-five dollars per month.

"(7) In case my daughter, Mary Virginia Nolan, should die leaving surviving her a child or children, it is my will, and I hereby devise and bequeath to such child or children, the whole of my property and estate remaining in the hands of my said trustees after the death of said Mary Virginia Nolan. In case Mary Virginia Nolan should die leaving a husband but no children surviving her, I will and bequeath to her husband one thousand dollars, and I will, devise and bequeath in such case all the residue of my property to the children of H. Kernole of Bryan, Brazos county, Texas, share and share alike, and direct that my said trustees pay over the same to them.

"(8) I give and bequeath to my daughter, Anna L. Lewis, the sum of fifty dollars to be paid to her by my executors out of the first money which may come into their hands.

"In testimony whereof I have hereto subscribed my name in the presence of Chas. L. Flake and M. E. Kleberg, attesting witnesses, who sign this, my will, in my presence and in the presence of each other, at my request on this, the 31st day of August, 1886. C. Nolan.

"Attesting witnesses: M. E. Kleberg. Charles L. Flake."

Charles Nolan died in January, 1906, leaving surviving him his wife, Wilhelmina Nolan, and two daughters, Mary Virginia Nolan and Mrs. Annie Lewis. The property mentioned in the will was community property. One of the trustees mentioned in the will, Henry Kernole, died prior to Nolan's death, while Charles Allen, another trustee, died several years after the death of Nolan, but before this suit was brought. The will was probated in 1906, and Charles Allen and John C. Walker qualified as executors and, acting also as trustees, took possession of the estate and jointly executed the trust until Allen died, since which time Walker has been acting as sole trustee and executor. Annie L. Lewis, joined by her husband, E. T. Lewis, filed a contest of the will in the county court, all parties, including the children of Henry Kernole, appearing in same, which contest was compromised and settled by agreement of all parties and approved by the court; the sum of $12,000 being paid out of the estate to said Annie L. Lewis, who, joined by her

husband, executed and delivered to said Allen and Walker, as executors and trustees under the will, a conveyance, reciting that the $12,000 was paid out of Chas. Nolan's estate, and conveying all of the right, title, interest, and claim, whether present or future, vested or contingent, of said Mrs. Annie Lewis in and to the estate of Charles Nolan, including all of the expectancies, reversions, and remainders of every kind and description which she or any person claiming by, through, or under her might then have or thereafter become entitled to, also any claim or right she then had, or thereafter might have, by reason of any lapsed or void provisions, legacies, or bequests in the will, or by reason of there being at any time no person to take said estate. It is further provided that Mrs. Lewis estops and bars herself, her heirs and assigns, from claiming any of the assets of said estate from any source whatsoever, and that the executors and trustees are to distribute the same in accordance with the terms of the will, or if that be impossible, or if at any time any of the provisions of the will lapse, fail, or be uncertain, they shall at all events deliver and distribute said estate to the children of H. Kernole, their heirs or assigns, and, if there be none, then to the persons entitled to receive the same under the law, other than Mrs. Lewis, her heirs or assigns.

This instrument is dated July 7, 1906, duly acknowledged by Mrs. Lewis and her husband, and on July 9, 1906, the probate court, in which the contest of the will was pending, entered an order reciting that all parties had agreed to the compromise and confirming the same.

Mary Virginia Nolan died March 2, 1911. She never married and had no children. Her physical condition was fairly good, but mentally she was weak. Charles Nolan's will was made shortly after the marriage of Mrs. Lewis. Nolan and his wife were displeased on account of her marriage. She did not visit her parents for about 18 months after her marriage, because she married against her father's wishes, but after that visited them occasionally, at one time staying five weeks. She testified her father was a "little cool" towards her.

John C. Walker, executor, was the confidential attorney and adviser of Charles Nolan from 1877 to the time of his death, and while Nolan was on his deathbed Walker was sent for and asked Nolan if he wanted any writing done of any kind respecting his will or anything else, to which Nolan very positively replied that he did not, that he did not want to change anything.

Henry Kernole was a brother of Charles Nolan. They were orphans, reared by different people, and one of them took the name of the people with whom he lived.

Mrs. Wilhelmina C. Nolan left a will, dated March 25, 1911, probated November 22, 1911, wherein she bequeathed to Mrs. Lewis $5,000 for herself, and $4,000 in trust for such child or children of said Mrs. Lewis living at the time of testatrix's death, and the residue to Mrs. Mary B. Walker, who, for $30,000 paid her out of the estate, conveyed to Mrs. Lewis all property and rights acquired by said Mrs. Walker under said will.

Upon these facts, the trial court held that upon the death of Mary Virginia Nolan, leaving neither husband nor children surviving her, the will vested title to the residue of Charles Nolan's estate in the children of Henry Kernole, and decreed that the executor pay such residue in equal shares to James O. Kernole, J. C. Kernole, Mrs. Willie D. Wilson, and Charles F. Knoblaugh, guardian of Charles H. Knoblaugh. Mrs. Annie L. Lewis duly perfected an appeal from said judgment.

By the first assignment of error it is contended the court erred in not holding that the will of Chas. Nolan lapsed upon the death of Mary Virginia Nolan, and that the property in the hands of Walker, as executor and trustee, vested in Mrs. Annie L. Lewis as heir at law and next of kin of said Chas. Nolan.

The particular paragraph of the will which is the bone of contention in this case is the one reading as follows: "In case my daughter, Mary Virginia Nolan, should die leaving surviving her a child or children, it is my will, and I hereby devise and bequeath to such child or children the whole of my property and estate remaining in the hands of my said trustees after the death of said Mary Virginia Nolan. In case said Mary Virginia Nolan should die leaving a husband, but no children surviving her, I will and bequeath to her husband one thousand dollars, and I will, devise and bequeath in such case all the residue of my property to the children of H. Kernole of Bryan, Brazos county, Texas, share and share alike and direct that my said trustees pay over the same to them."

We quote, from Simpkins on Administration of Estates in Texas, the following tersely and accurately expressed rules for the construction of wills: "The first and primary rule is that the court must discover the intention of the testator, as expressed in the words of the will. All other rules are subordinate. * * * The intention must be reached by considering the whole will as an entirety, and not by any special clause independent of the others, and any special intent evidenced by a clause in the will, if inconsistent with the general intent, the latter must prevail. * * * Again, in reaching intention, we must put ourselves in the place of the testator, with all of his surroundings, where any ambiguity of expression is to be solved. It is a light which may be often used effectively in place of applying arbitrary rules. Assuming the testator's place, we

can discern intention by implications that appear, though not expressed, and which the testator has assumed were understood. * * * In construing wills the presumption is that the testator intended to dispose of the whole estate. If the language can be so construed, the court will prevent a partial intestacy."

The above rules are well settled, but various other rules have been applied, which, when treated as absolute, have sometimes defeated the will of the testator, and the tendency now is to consider the language of each will carefully as well as its general purpose, and the circumstances surrounding the testator and known to him at the time he made the will, and from the same determine his intention as expressed in the will.

In the present case the testator was incensed at his daughter Annie at the time he made his will, because of her marriage, and thus had a motive for disinheriting her. Intending to give her $50, he deducted same from his estate in the clause in which he vested the remainder in certain trustees. He then provided that if Mary left children they should take all of his estate remaining in the hands of the trustees. Then, after providing for the contingency of Mary having no children, he does not turn to Annie for the purpose of giving her the estate but uses the clause wherein the Kernole children are mentioned, and in the very next words provides that Annie shall receive $50. He apparently wanted it distinctly understood that he had not overlooked his daughter Annie and therefore willed her $50, an amount so insignificant when compared to his estate that it shows clearly he did not care to lighten life's burdens for her by giving her any appreciable portion of his ample estate. If he intended that she should have more than $50 under any circumstances, it cannot be understood why the leaving of a husband or children by Mary could have induced him to disinherit her. The conclusion is irresistible that there was a general intention on the part of the testator that his daughter Annie should receive no more than $50 out of his estate. By such will H. Kernole is made one of the trustees and executors, which evidences the fact that testator had confidence in his brother and shows that he was on good terms with him, because it is not the usual or customary thing for people to appoint, as executors or trustees, persons with whom they are not on good terms. If he felt kindly enough towards his brother to appoint him one of the executors and trustees, he undoubtedly felt kindly enough towards his brother's children to act sincerely and in good faith towards them, and it cannot be conceived that he would be very generous to them provided Mary left a husband but would give them nothing if she left no husband · surviving her. If there should be no husband, there would be all the

more reason for giving the estate to the Kernoles (if he did not want Annie to have it), and a construction, which leads to the absurd result of making a contingency operate against the Kernoles which should operate in their favor, should not be adopted if it can be avoided. Appellant's counsel suggest that the devise to the Kernole children may have been in a spirit of irony, because based upon an almost impossible event, but this suggestion cannot be adopted by reason of any of the surrounding circumstances or by reason of any provisions of the will. To so conclude, we would have to believe that testator did not feel kindly towards the children of his brother whom he appointed as executor and trustee. If he expected his brother to guard the interests of his afflicted child through the years of her life, he certainly would not be so unkind as to make a devise to his brother's children in a spirit of irony believing it would never become effective. It is much more probable that having decided to make the Kernole children his residuary devisees, and believing it highly probable they would receive the estate, he deemed it wise and proper to appoint their father as one of the executors and trustees so that some one directly interested in preserving the estate would be in a position to actively participate in the investment and management thereof.

The general intention of the testator, gathered from the will and surrounding circumstances, is that his daughter Annie should receive $50 and no more, and in order to carry out such intent, the other daughter being mentally afflicted, and it being, as appellants say, "beyond the comprehension of testator that she could lawfully contract marriage, and equally improbable that she should have any children," he turned to his brother's children as those to whom the estate should ultimately go, if Mary should die without issue. This general intent being manifest, it seems clear that the testator thought of and expressed the case of there being a husband only with reference to the $1,000 he desired him to have, and not as a condition or contingency upon which the gift to the Kernoles was to depend. In other words, the existence of the husband was no inducement to make the gift to the Kernoles, and the testator did not recognize it as such but intended that if such event transpired the Kernoles should not take all the estate, because $1,000 would then go to the husband.

It is, however, contended that, owing to the peculiar wording of the seventh section of the will, it must be held that the testator gave the Kernoles only a balance remaining after the $1,000 was deducted and conditioned upon the double contingency of Mary dying without issue and leaving no husband, and that the failure to provide for the contingency of there being no husband is a casus omissus, something which had not occurred

to the testator and was not provided for. Sometimes contingencies happen which did not occur to the testator and which are therefore unprovided for, but in this case the contingency of Mary never marrying must have occurred to the testator, on account of her mental condition, and was present in his mind when he wrote the will. As the testator undertook to dispose of his entire estate, it is not reasonable to suppose that he intended to die intestate upon a contingency which he had in mind as not only possible but probable. It follows that we must presume that the testator did not wish such contingency to render him intestate, and that he made provision against such intestacy; and, if by any construction of his will, aided by implication, it can be determined that he expressed such intention, we should uphold and give effect to the same. If no one takes under the will because Mary had no husband, then the testator is charged with the intention of rendering himself intestate upon a contingency which he knew was not only possible but probable. Mr. Redfield says: "The fact that the testator makes no provision in regard to the disposition of his estate, provided the event named for the devisee coming into full possession never occurs, shows very satisfactorily that it was not in the mind of the testator to create a contingent estate, since the very fact of doing so would suggest the propriety of some provision for the disposition of the estate, in the event of that contingency not happening, as no one leaving a will would purposely leave property undisposed of." In Metcalf v. Framingham Parish, 128 Mass. 370, the court said: "If the reading of a whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court must supply the defect by implication and so mould the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared." This language is quoted with approval by the Court of Civil Appeals for the Fifth District in the case of Sanger v. Butler, 45 Tex. Civ. App. 527, 101 S. W. 459, also by the Supreme Court of the United States in the case of Robinson v. Portland Orphan Asylum, 123 U. S. 702, 8 Sup. Ct. 327, 31 L. Ed. 293.

In the case of Connor v. Gardner, 230 Ill. 268, 82 N. E. 643, 15 L. R. A. (N. S.) 79, the Supreme Court of Illinois, in speaking of devises by implication, said: "A gift is made without any express words of gift, if an intention to give clearly appears from the will as a whole. Rood, Wills, § 495. A devise upon implication cannot rest upon conjecture; but it is not required that the inference should be absolutely irresistible. It is enough if the whole circumstances, taken together, afford such an inference as leaves no doubt in the mind of the judge who has to decide as to the intention of the testator."

We think the general intention to make the Kernole children his devisees in case Mary dies without issue is so manifest that it necessarily follows, under the rules considered by us herein, that the bequest to Mary's husband, should there be one, must be construed, not as a condition upon the happening of which the estate was to vest in the Kernoles, but as a limitation which, to the extent of $1,000, would curtail and diminish the estate given the Kernoles if the event happened. Appellant's counsel contend earnestly that we cannot do this, and support their position with very lengthy arguments which show great research as well as marked ability in applying the rules laid down in the many cases they have examined. When the language of section 7 alone is considered in the light of many of the cases cited by them, there appears to be much force in their contention that intestacy results as to all the estate except the $50; but, when we put ourselves in the place of the testator at the time he made the will and consider the entire will, the conviction is forced upon us that, were we to adopt appellant's construction of the will, we would destroy the intention of the testator. Many of the cases relied upon by appellant are cases in which the estate was vested and was to be divested upon the happening of certain events, and in such cases the rule that the law favors the vesting of estates has been relied upon to justify a strict construction of the language, and the consequent requirement that all conditions be literally fulfilled before the estate could be divested. Where the estate has vested under the will, the courts are not confronted with the presumption against intestacy, to which great weight has always been given in construing wills. However, we do not agree that in all the cases of this character cited by appellant the courts have arrived at the intention of the testator by applying the rule favoring the vesting of estates.

The next four assignments relate to the same matter as the first and are overruled for the reasons given for overruling the first. The judgment must therefore be affirmed, and it is unnecessary to decide whether appellant is precluded from recovering by reason of the conveyance made by her to the executors.

Judgment affirmed.