**MAYFIELD et al. v. RUSSELL et al.**
**(No. 551.)**

Court of Civil Appeals of Texas. Waco.
June 30, 1927.

Rehearing Denied Sept. 15, 1927.

**1. Wills ☞439—In construing will, cardinal principle is to discern testator's intention.**

The cardinal principle in construing wills is to discern the real intention of the testator.

**2. Wills ☞439—Testator's intention will be enforced when clearly discernible, though disposition of property be unjust or absurd.**

If the intention of a testator is clearly discernible from the context of the will or from the will together with the testimony, courts will enforce it, notwithstanding that they consider the disposition of property unjust or absurd.

**3. Wills ☞656—Conditions in wills tending to defeat estates are construed quite strictly, though testator's clear intent will be followed if not illegal or contrary to public policy.**

Conditions in wills which tend to defeat estates are construed quite strictly by courts, but a testator who makes his intention clear may impose such conditions as he pleases, if the conditions are not illegal or contrary to public policy.

**4. Executors and administrators ☞138(4)—Will granting executors authority to sell any portion of estate for best interests of estate and legatees held to authorize sale of property to pay $15,000 debt, where income from estate paid only interest and expenses.**

Under will granting executors absolute power to care for, manage, and control estate as in their judgment would best accomplish the purposes of the will, and to sell, exchange, or incumber any portion of the estate as in their judgment might be for best interests of estate and legatees, and to reinvest proceeds, executors *held* to have power to sell portion of estate to pay debt of $15,000, where income from estate had been only about enough to pay interest on debt and expenses during nine years of administration.

Appeal from District Court, McLennan County; Richard I. Monroe, Judge.

Action involving construction of will between Mrs. Mattie Curtis Russell and others on the one part and John D. Mayfield and others on the other part. From a judgment in favor of the former, the latter appeal. Affirmed.

Kyle Vick and J. W. Cocke, both of Waco, for appellants.

Webb & Webb, of Sherman, for appellees.

BARCUS, J. The only issue involved in this lawsuit is the construction of the will of Dr. A. M. Curtis, deceased; the facts being agreed to. Dr. Curtis died in August, 1917, and his will was duly probated in September, 1917; appellants being appointed independent executors of his estate. At the time Dr. Curtis died, he owed about $25,000, and had $10,000 life insurance, which the executors collected and applied on his debts, leaving about $15,000 unpaid debts, which the estate still owes. The income from the estate has been about sufficient to pay the interest on said indebtedness and the expenses during the nine years the executors have been administering the estate, and it is agreed there is no probability that the income from the estate will be sufficient to pay said debts within any reasonable time. The sole issue to be determined in this litigation is whether the executors, under the provisions of the will, have the power to sell a sufficient amount of the corpus of the estate to pay the debts. The executors were requested by appellees as legatees to sell a sufficient amount of the property belonging to the estate to pay the debts and then divide the remainder, if any, under the provisions of the will. The executors refused said request on the theory that they do not have the power under the provisions of said will to sell the estate to pay the debts.

There are only three paragraphs of the will which bear on the question or throw any light thereon. Paragraph 2 reads:

"I authorize and direct my said executors immediately upon my death to take possession of all of my property of every kind and description and wherever situated, and to collect any and all sums of money due my estate, and to care for, manage and control the same as in their judgment will best accomplish the purposes hereinafter expressed. I expressly authorize them to sell, exchange, encumber my estate, or any part thereof, as in their judgment may be for the best interests of my estate and the legatees under this will, and in the event they shall sell any of said property, or in the event they shall encumber the same for the purpose of securing any loan or loans, the proceeds arising therefrom shall be held by them under the terms of the trust herein declared, and shall be governed by the terms thereof as herein expressed; and they shall have the right to reinvest such proceeds, or any part thereof, as their judgment may dictate. I expressly authorize my said executors to collect any and all life insurance due my estate and to use same in paying debts, or invest the same safely so as to produce an income, as their judgment may dictate. I desire my stocks in the several corporations to be held intact as long as possible consistent with the provisions of this will."

Paragraphs 3, 4, 5, and 6 provide for some special bequests and trust funds to be created. Paragraph 7 reads:

"I further direct my said executors * * * to keep all the remainder of my estate together and to care for and control and manage the same, and to keep the same invested and to collect the revenues thereof, and to apply the same to the discharge of any and all just and lawful debts now owed by me or which may be incurred in the management and preservation

of my estate; and they are hereby empowered, with the consent of any creditor or creditors, to extend the time of payment of any indebtedness owing by me at the time of my death until such time as sufficient revenue shall arise from my estate to discharge the same."

Paragraph 8 reads:

"When all of the indebtedness owed by me at the time of my death, together with all expenses and charges incurred in the management, preservation and administration of my estate as herein provided, has been fully paid, I direct my executors herein named to divide my 'said estate "

—and then provides in detail how the same is to be divided, naming appellees herein as the legatees under the will.

The parties agree that the income from the estate has not been sufficient to reduce the indebtedness any appreciable amount since Dr. Curtis' death, and that in all probability it will not be sufficient to do so any time within the near future. It was further agreed that all of the creditors of the estate had from time to time agreed to extend the time of payment of the indebtedness owed by said estate, and that none of the creditors had refused to wait until the revenue would produce sufficient amount, and neither had they agreed not to wait. There was no evidence offered attempting to show the intention on the part of Dr. Curtis at the time he made the will, nor the amount of debts he owed when the will was executed, nor what revenue his estate was producing. Neither does the record show the value of his estate, nor of what it consists. We are therefore limited in our interpretation of the powers vested in the executors to the wording of the will itself.

[1, 2] If appellants are correct in their contention that they as executors of the estate have no power to sell the corpus of the estate to pay the debts, then under the record there is no probability that the debts will ever be paid, unless the creditors refuse to extend the time of payment and bring suits to enforce the collection thereof, and thereby add the costs of litigation and force the executors to sell the property or have same sold by process of law. The cardinal principle announced by all the courts and text-writers in construing wills is to try to discern the real intention of the testator. Lewis v. Walker (Tex. Civ. App.) 162 S. W. 30; Cleveland v. Cleveland, 89 Tex. 445, 35 S. W. 145; Faulk v. Dashiell, 62 Tex. 642, 50 Am. Rep. 542. The courts are not concerned with reference to the disposition parties make of their property, although they might consider the disposition thereof unjust or absurd. If the intention to make said disposition thereof is clearly discernible from the context of the entire will, or from the will together with such testimony as may be offered in connection therewith, the courts will enforce same.

[3] Volume 2, p. 1882, of the Second Edition of Page on Wills, lays down this rule:

"Conditions which tend to defeat estates are construed quite strictly. This does not mean that the court must put a strain or over-technical construction upon the language employed so as to defeat testator's intention. If the condition is not illegal or contrary to public policy, testator may impose such conditions as he pleases, if he makes his intention clear."

[4] We have no evidence in this case showing the condition of Dr. Curtis' estate at the time he executed the will, nor the extent of the indebtedness that he owed at said time, nor any of the surrounding circumstances. The will as above copied gives the executors absolute power "to care for, manage and control the same as in their judgment will best accomplish the purposes of the will," and "the executors are expressly authorized to sell, exchange or encumber any portion of the estate as in their judgment may be for the best interests of the estate and the legatees under the will." Section 8 above quoted gives the executors the option of extending the time of payment of the debts, if the creditors will consent. Clearly, before the debts could be extended in time of payment, both the payor and the payee must consent thereto. If the estate consists of $50,000 in Liberty bonds bearing 4½ per cent. interest, which could be sold at par, and the debts are $15,000, bearing 10 per cent. interest, under appellants' construction they could not sell sufficient bonds to pay the debts, but are required to administer the estate an indefinite time until the 4½ per cent. interest will pay the debts bearing 10 per cent. interest, together with the costs of administration. The executors are given the power to sell any portion of the estate and reinvest the proceeds. We think when the will is read in its entirety, it gives the executors the discretionary power, if they think it for the best interest of the estate, to sell a portion thereof and invest the proceeds in the payment of the indebtedness due and owing by the estate. If they could sell $15,000 in Liberty bonds, bearing 4½ per cent. interest, and pay off entirely the $15,000 indebtedness, and leave the other $35,000 bonds clear, and, if in their judgment they thought that procedure best for the estate and the legatees under the will, under the provision above quoted we think they have that power. We do not think it was the intention of the testator to require the executors to hold the estate until the interest and expenses consume the estate in its entirety, simply because the property did not produce a sufficient amount of income to pay the expenses incident to the administration and the debts due by the testator at the time of his death. To put the construction on the will as claimed by appellants would, in effect, destroy the estate and deprive the legatees in the will of realizing anything

from said estate. During the almost ten years which the executors have been handling the estate it has not produced more than sufficient to pay the interest on the indebtedness and the expenses incident to the administration thereof. There is no evidence that the property has enhanced in value or that it will enhance in value or that it consists of any property that should be held. These, however, are questions that would enter into the action of the executors in determining whether in their judgment the property should be sold, granting they had the power to do so. The question to be determined in this litigation is whether the executors can, if they deem wise, sell the estate. The trial court held that, under the provisions of the will, the executors had the legal right and power to sell a sufficient amount of the corpus of the estate to pay its debts, if they in their judgment thought said sale or sales would be for the best interest of the estate and the legatees.

We think the judgment of the trial court is correct, and same is affirmed.

GALLAGHER, C. J., took no part in the consideration and disposition of this case.