**DALLAS CONSOL. ELECTRIC ST. RY. CO. et al. v. CITY OF DALLAS et al.**[*]
**(No. 526–3993.)**

(Commission of Appeals of Texas, Section A. April 23, 1924.)

**1. Statutes ⟨⟩205—Entire act considered to determine intent of ambiguous portion.**

The whole of a legislative act must be looked into to determine legislative intent as to any ambiguous portion.

**2. Municipal corporations ⟨⟩406(1)—Power to assess must be clearly granted.**

City has power to levy drain assessments only when granted in clear, unmistakable terms, statutes purporting to grant such power being strictly construed.

**3. Statutes ⟨⟩194—General words restricted by particular words.**

General words following designation of particular subjects or classes will be restricted by particular designation.

**4. Municipal corporations ⟨⟩417(1), 425(3)—Storm sewer not "street improvement" assessable against street railway.**

Storm sewer under street is not "street improvement" within Dallas City Charter, art. 10, § 1, which clearly relates to surface improvements, and street railway cannot be assessed therefor under subdivision (d) of section 1, requiring street railway to pay whole cost of street improvements between tracks and for two feet on each side of rails.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Street Improvement.]

**5. Municipal corporations ⟨⟩406(2) — City charter if intended to make street railway assessable for storm sewer held too indefinite to be enforceable.**

Dallas City charter, art. 10, § 1, defining street improvements, and subdivision (d), requiring street railways to pay cost of street improvements between and for two feet on

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied May 28, 1924.

each side of its rails, if intended to include storm sewers within term street improvements, *held* as to that matter too indefinite and uncertain to be enforced.

**6. Municipal corporations ☞488, 489(5)—Failure to object to void assessment no estoppel to resist collection.**

Street railway company's failure to appear before board of commissioners and object to void storm sewer assessment did not estop it from resisting collection.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by the City of Dallas against the Dallas Consolidated Electric Street Railway Company and others, wherein the Texas Bitulithic Company intervened. Judgment for defendant on an appeal by intervener was reversed and the cause remanded by the Court of Civil Appeals (Texas Bitulithic Co. v Dallas Consol. Electric St. R. Co., 248 S. W. 746), and defendants bring error. Judgment of Court of Civil Appeals reversed, and judgment of district court affirmed.

Templeton, Beall, Williams & Worsham, and Dabney, Goggans & Ritchie, all of Dallas, for plaintiffs in error.

J. J. Collins. City Atty., and L. R. Callaway, Asst. Atty. Gen., both of Dallas, for defendants in error.

CHAPMAN, J. This suit was instituted in the district court of the Sixty-Eighth judicial district of Dallas county, Tex., by the city of Dallas, in which suit the Texas Bitulithic Company intervened. The plaintiff and the intervener in the court below alleged, in substance, that the board of commissioners of the city of Dallas, by resolution passed and adopted, had ordered the improvement of Bryan street in the city of Dallas, from the northeast line of St. Joseph street to the northeast line of Munger boulevard, by grading, raising, and filling same, and by installing concrete curbs and gutters, and installing and building storm sewers and drains necessary to the proper improvement of said street.

It was alleged that the board of commissioners assessed against the Dallas Consolidated Electric Street Railway Company the cost of paving, and 56.4 per cent. of the cost of storm sewers; the said per cent. of the cost of storm sewers being alleged to be $6,292.62. The Dallas Consolidated Electric Street Railway Company paid all of the assessment except that for the cost of storm sewers, which it refused to pay and the suit was filed to enforce the collection of the $6,292.62.

The city of Dallas and the Texas Bitulithic Company urged that the city of Dallas had the power to make the assessment against the street railway company by virtue of the provisions of article 10, § 1, and of subdivisions (b) and (d) of said article.

Section 1 of article 10 of the Charter of the City of Dallas, which was enacted by the Legislature of the state, is as follows:

"The term 'street improvements,' as embraced in this article, shall include the improvement of any street, alley, highway, public place or square, or any portion thereof, within the city, by filling, grading, raising, macadamizing, remacadamizing or otherwise improving the same, or of constructing or reconstructing of sidewalks, curbs, gutters or repairing the same; and shall also include the laying out, opening, narrowing, straightening or otherwise establishing, defining and locating any street, avenue, public alley, square, place or sidewalk, and said terms shall also include any other street improvement of a public nature and for a public benefit."

By subdivision (b) of section 1, the board of commissioners are given power. to order the improvement of any public highway within the city of Dallas.

By subdivision (d) the board of commissioners of the city of Dallas are given the authority to assess the cost of improving any public highway, against abutting property owners, and providing that the cost of improving such street between and under the rails, tracks, and switches, and two feet on the outside of the rails, may be assessed against the street railway.

Article 11, § 4, of the City Charter of the City of Dallas, is as follows:

"The board of commissioners shall have power by ordinance, to provide for and construct a general sewer and drainage system to be divided into public and private sewers and drains, and to be constructed, maintained and regulated in such manner, and out of such material as the board of commissioners may prescribe. Sewers may be established as the board of commissioners may direct, and there may be extensions of branches and sewers already constructed, or entirely new throughout, as may be deemed expedient. The board of commissioners may, if necessary, levy a tax on all taxable property in the entire city to pay for the construction and repairs of such public sewers, which shall be called a special sewer tax, and shall be used solely for such purpose."

The remainder of the subdivision is not material for the purpose of the inquiry herein.

The plaintiffs in error here (the defendants in the trial court), urged in the trial court and in the Court of Civil Appeals that the provisions of article 10 of the City Charter did not give to the board of commissioners of the city of Dallas the authority to assess against the street railway company any portion of the cost of the construction of a storm sewer, insisting that the definition of "street improvements," as included in the said provision of the city charter, did not include storm sewers, but, on the contrary, ex-

cluded storm sewers. The trial court sustained the contention of the street railway company, and entered judgment that the plaintiff and the intervener take nothing. The city and the paving company carried the case to the Court of Civil Appeals for the Fifth supreme judicial district on writ of error, and the Court of Civil Appeals entered its opinion and judgment, holding, in effect, that the definition of "street improvements," as contained in section 1 of article 10 of the Charter of the City of Dallas included storm sewers, and therefore held that the board of commissioners of the city of Dallas had the authority to assess against a street railway company, occupying a· street in the city of Dallas, the cost of the construction of storm sewers, but that in no event could the cost of the construction of storm sewers be assessed against a street railway company occupying a street in the city of Dallas, except such part thereof as was placed under the street car track, or within two feet of our outside rail, and that because of the fact that the trial court had specifically found that 56.4 per cent. of the storm sewer, the cost of which was assessed against the street car company, was not in the prescribed area, but that, on the contrary, a major portion of the storm sewer was without such area, the Court of Civil Appeals remanded the case to the District Court for the purpose of determining the cost of the storm sewer placed under or within two feet of the outside rail of the street car track. This is taken from the statement of the case by attorneys for plaintiffs in error.

There are two issues before this court:

(1) Do the provisions of article 10 of the Dallas City Charter give to the board of commissioners of the city of Dallas the authority to assess against the street railway company any portion of the cost of the construction of a storm sewer.

(2) Was the street railway company estopped from contesting the payment assessed against it by the city of Dallas for the construction of the storm sewer for the reason that the railway company did not appear before the board of commissioners for a hearing on the assessment after having been notified to appear.

[1-3] In determining the first issue three seemingly well-settled principles of law must be kept in mind:

(a) When any portion of a legislative act is ambiguous, the whole act should be looked to to determine the legislative intent.

(b) "The power to levy assessments for the construction of drains can be exercised only when granted in clear and unmistakable terms, and statutes purporting to grant such power must be strictly construed as against those asserting the right to exercise it." 19 C. J. 715.

(c) "Where in a statute general words follow a designation of particular subjects or classes of persons the meaning of the general words will be restricted by the particular designation in such statute." F. & M. Nat. Bank v. Hanks, 104 Tex. 320, 137 S. W 1120, Ann. Cas. 1914B, 368.

Section 1 of article 10 of the Dallas Charter, in defining the term "street improvements," mentions three general classes of improvements as follows: (1) The improvement of any street, etc., by filling, grading, raising, macadamizing, or remacadamizing; (2) the constructing or reconstructing of sidewalks, or gutters, or repairing the same; (3) the laying out, opening, narrowing, straightening, or otherwise establishing, defining, and locating any street, avenue, public alley, square, place, or sidewalk. All three of these general classes clearly refer to surface improvements.

The portion or subdivision (d) of article 10 of the Dallas Charter referring to the portion of the street improvement to be paid by the street railway company is as follows:

"Provided, that when any person, firm or corporation owns any railroad or street railroad or railroad switch of any kind on such public highway, or portion thereof, ordered to be improved, such person, firm or corporation shall pay the whole cost of such improvement between the rails and tracks and for two feet on each side of the rails of such railroad or street railroad and the city shall be relieved of the part of the costs to be paid by such road. * * * Whenever a contract shall be let for any such improvement, the board of commissioners shall levy a special tax upon the roadbed, ties, rails, fixtures, rights and franchises of such railroad or street railroad for the pro rata share due from such road for improvements between their tracks and rails and two feet on each side thereof." ·

To our minds this clearly refers to surface improvements. The franchise of the street railway company includes only the use of the surface of the street, and the Legislature certainly did not have in mind the purpose of having the street railway company to pay for any other than surface improvements. That the Legislature did not intend that the portion of article 10 of the Dallas Charter above set out, should apply to any other than surface improvements is borne out by the fact that article 11, section (4) of the charter provides for a general sewer and drainage system and provides that same may be paid for by levying a tax on all the taxable property of the city, and a portion of said section is as follows:

"No public sewer shall be constructed through private property when it is practicable to construct it along or through a street or public highway."

To hold that the street railway company should pay for the portion of the storm sewer placed under the portion of the street used by the street railway company would

have the effect that, if all the sewer were placed under that portion of the street, the company would have to pay for all the storm sewer. The portion of section (4), art. 11, above quoted, provides that the public sewer shall be placed along or through a street where practicable, and if the sewer should be placed in the street it could be placed entirely under that portion of the street for which the street railway company shall pay the improvement, and this would lead to a condition where the city could force the street railway company to pay for all storm sewers simply by placing the storm sewers on streets where the tracks of the railway company are located, and by building them under that portion of the street, the improvements of which shall be paid for by the street railway company. The street railway company could receive no special benefit by having the storm sewers placed under its tracks, but it would be rather to the detriment of its roadbed to have the sewer so placed, and such being the case it would certainly be unjust to hold that the railway company, under certain conditions, could be forced to pay all the cost of constructing a public storm sewer.

[4, 5] We have carefully considered the authorities cited by defendants in error, and are aware that, under some laws and under certain conditions, a storm sewer may be considered as a part of street improvements, but from a careful study of that portion of the Dallas charter referring to street improvement and that portion referring to a sewer and drainage system, and by an application of the three general principles above set out, we are of the opinion that the Legislature did not intend that street improvements, as mentioned in the charter, should include storm sewers, but if it could be held by any course of reasoning that the Legislature intended that street improvements should include storm sewers then it wholly failed to provide any equitable plan from which it might be determined with any degree of certainty what portion of the construction of a storm sewer should be paid for by the street railway company, but left that matter too indefinite and uncertain as to be of any force and effect.

[6] We therefore hold that any attempt by the board of commissioners of the city of Dallas to assess any portion of the cost of the storm sewer against the street railway company was void. The attempted assessment against the street railway company being void, then the street railway company would not be estopped from contesting a void assessment, by failing to contest the assessment before the board of commissioners. In the case of Hutcheson v. Storrie, 92 Tex. 685, 51 S. W. 853, 45 L. R. A. 289, 71 Am. St. Rep. 884, Judge Brown used the following language:

"But we think that the estoppel, to question the 'validity' of the tax, must be construed to forbid the owner to set up such invalidity as might arise from a want of compliance with the terms of the charter, and not such as might grow out of want of authority in the city to make the assessment."

We recommend that the judgment of the Court of Civil Appeals be reversed and that the judgment of the district court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commissioner of Appeals is adopted, and will be entered as the judgment of the Supreme Court.