## KOSTROUN et al. v. PLSEK et al.
### (No. 1033—5221.)

Commission of Appeals of Texas, Section B. March 20, 1929.

W. A. Morrison and Roy Baskin, both of Cameron, for plaintiffs in error.

E. A. Wallace and B. P. Matocha, both of Cameron, for defendants in error.

SPEER, J. Anton and Emily Kostroun were husband and wife and owned communi-

ty property amounting in value to something like $30,000. Emily died in 1916 intestate. She left as her sole surviving heirs five children of the marriage—William, John, Joseph, Mary (wife of Joe Plsek), and Agnes (wife of Joe Slavik), all of whom yet survive, except Joseph, who left six minor children.

Prior to April 5, 1920, three of the children, Mary, Agnes, and John, conveyed their interest in their mother's estate to their father, Anton. On April 5, 1920, Anton Kostroun made his will, as follows:

"State of Texas, County of Milam.

"In the name of God, amen.

"Know all men by these presents:

"That I, Anton Kostroun of the County of Milam, State of Texas, being now in sound mind and deposing memory and being mindful of the uncertainty of life and the certainty of death, and being desirous of disposing of such of this world's goods and property as it has been the will of God to bless me with, do make, publish and declare this my last will and testament, hereby revoking any and all wills and codocils which may have been made by me at any time heretofore.

"1.

"It is my will and desire that all my just debts shall be paid out of the proceeds of my estate as soon after my death as is practicable and consistent with good business methods and that the proceeds of personal property belonging to my said estate shall be applied to the payment of such debts before any of the real property belonging to my estate shall be resorted to for such purpose.

"2.

"It is my will and desire that my body shall be buried in the Catholic cemetery at Marak, Milam County, Texas, by the side of my beloved wife, and that funeral services shall be conducted and a monument erected at my grave in a manner consistent with my financial circumstances and with my station in life.

"3.

"It is my will and desire that the executors of this my last will and testament shall pay to Ludmilla, the orphan girl, who has been reared in my family, the sum of Three-Hundred ($300.00) Dollars in cash when she shall have arrived at the age of eighteen years, provided the said Ludmilla shall have remained with my said family or any member thereof until she becomes 18 years of age; she, the said Ludmilla, is to receive my bed, mattress and other such furniture.

"4.

"It is my will and desire that the residue of my estate, real, personal and mixed, after the payment of my debts, funeral expenses and monument, and the legacy to the orphan child, Ludmilla, hereinbefore mentioned, shall be divided equally between my beloved children, Joseph Kostroun, William Kostroun, Mary Plsek and John Kostroun, share and share alike.

"5.

"It is my will and desire that my daughter, Agnes Slavik, receive nothing in the disposition of my estate, since I have paid her, the said Agnes Slavik, her full share in cash, said amount being $1170.10 paid for her and her husband to Joseph Kuchta, April 5th, A. D. 1920.

"6.

"It is my intention to dispose of all property which may belong to me personally by this last will and testament, but I have not intended nor attempted and do not here now, intend or attempt to dispose of the community estate or interest of my deceased wife in and to said property.

"7.

"I hereby nominate and appoint my beloved son, Joseph Kostroun, independent executor of this my last will and testament, and it is my will and desire that no bond shall be required of him as such executor and that no action of the probate court shall be had in any manner or matter pertaining to the administration and disposition of this my last will and testament other than filing the same for probate and the executor taking oath as such and returning into the probate court an inventory and appraisement of my said estate as is required by law.

"8.

"In the event of the death, failure, refusal or inability upon the part of my beloved son, Joseph Kostroun, to act as executor of this my last will and testament, then it is my will and desire that my beloved son, John Kostroun, shall act as such executor without bond and under the same terms and conditions as are hereby imposed upon the said Joseph Kostroun.

"In witness whereof I have hereunto set my hand this the 5th day of April, A. D. 1920, in the presence of T. F. Hardy and B. J. Matocha, who attest the same at my request."

On January 22, 1924, Joseph likewise conveyed to his father his interest in the mother's estate. Anton Kostroun died in January, 1927, and his will was probated, naming John Kostroun as independent executor.

This suit was brought by Mary Plsek and Agnes Slavik, joined by their husbands against their two brothers and the six children of their deceased brother, individually, and against John Kostroun as executor, praying for a construction of the will and a partition of the estate. The case was tried to a jury, and judgment was entered upon a directed verdict apportioning the estate as follows: William Kostroun, thirteen-fortieths; John Kostroun and Mary Plsek, each nine-

fortieths, and the six children of Joseph Kostroun, each three-eighthieths. Agnes Slavik was denied any portion. On appeal, the Court of Civil Appeals reversed this judgment and rendered one "construing the will of Anton Kostroun to devise to his four named devisees each a one-fourth interest in his half of the community property, leaving the balance of the community property which he acquired by transfers from four of his children undisposed of and vesting by the law of descent and distribution one-fifth each in his four surviving children and one-fifth in equal shares to the six children of his deceased son, Joseph." 6 S.W.(2d) 813.

The reversal by the Court of Civil Appeals is predicated upon its construction of the will as affected by clause 6, to review which the writ of error has been granted.

We think the construction by the Court of Civil Appeals is wrong and that by the trial court is right.

The sole purpose of any construction of a will is to ascertain the intention of the testator, and, where legally possible, to give effect to that intention. This is elementary, and no one contends for a different rule.

In arriving at that intention, there are certain well-recognized rules of decision, none of which perhaps is absolute or controlling, but all of which are to be considered and observed as far as possible in the final determination. Amongst these rules, applicable to the present inquiry, may be mentioned: (1) The will is to be read and considered as a whole, and not to be determined by the language of any particular paragraph dissociated from the remainder. (2) That construction should be adopted which will give effect to every part of the instrument, where possible. (3) There is a presumption that the testator devises only his own property. (4) There is a presumption that the testator has disposed of his entire disposable property and that he has not died intestate as to a part. (5) There is a further rule of general construction applicable alike to wills that words of general import must yield to specific language to the precise point.

Bearing these rules in mind, we will examine the will.

The language of the preamble "being desirous of disposing of such of this world's goods and property as it has been the will of God to bless me with," the terms, "proceeds of my estate," in section 1, "the residue of my estate," in section 4, the exclusion of the daughter, Agnes, from any participation "in the disposition of my estate," in section 5, the "intention to dispose of all property which may belong to me personally," in section 6—all evidence an intention to dispose of all property of which the testator may die seized and possessed, and negative the intention to die intestate as to any of such property. These affirmative indications of such intention but merely strengthen the usual presumption against intended intestacy in part, which obtains from the mere fact of making a will at all. Young Women's Christian Home v. French, 187 U. S. 401, 23 S. Ct. 184, 47 L. Ed. 233; Kenaday v. Sinnott, 179 U. S. 606, 21 S. Ct. 233, 45 L. Ed. 344; Sanger v. Butler, 45 Tex. Civ. App. 527, 101 S. W. 459 (writ refused).

Such a presumption is not conclusive; it is merely one of fact, and is indulged because it is according to the common understanding and conduct of ordinary people, most likely the true intention of the testator. But such presumptive intention even thus further evidenced by general language may be controlled by more specific language, clearly evidencing an intention not to embrace within the will all of the testator's disposable property. It is the contention of the defendants in error, sustained by the Court of Civil Appeals, that the language of section 6 of the will is thus specific and controlling in the present case. It is there said:

"But I have not intended nor attempted and do not here now intend or attempt to dispose of the community estate or interest of my deceased wife in and to said property."

This language was employed for some purpose, and it is our duty to give it its proper effect in the construction. It is the contention of defendants in error that that proper effect is to limit the disposition to such property as the testator owned, which had not come through the community estate or interest of his deceased wife. On the other hand, it is the contention of plaintiffs in error that the language does not thus limit such disposition, but rather identifies the property generally disposed of by making certain that that portion of the community estate or interest of his deceased wife not personally owned by the testator was not included in the disposition. We agree with this latter view. Strictly speaking, at the time of the making of the will—and we may look to the circumstances surrounding the testator at this time to discover the intention—there was no community "interest" of the wife, for the wife was dead. But the testator used the expression "community estate or interest," evidently referring to her portion of the community property, either as it existed at her death or at some subsequent time, as the date of making the will or of its taking effect at the death of the testator. The language is susceptible of either meaning. At the time of the execution of the instrument, two-fifths of the wife's former community estate or interest was not in the testator, and there is nothing to indicate that that would not be the case at the time of the testator's death. The testator is not only presumed, but is actually shown, to have understood the nature of his wife's rights in their property, for he had previously purchased from three of the children their respective interests therein. He therefore knew

that two of such respective interests were outstanding, and the language used by him was very apt in excluding such interests from any possible disposition or attempted disposition by his will. Such precaution, where, as here, the legal title to the community usually stands in the husband, is not meaningless or even unusual. We think the language was employed in this sense and for that purpose; it merely made certain that the will should operate "to dispose of all property which may belong to the testator personally." To give to the language this meaning does not in anywise contradict those other portions previously referred to evidencing an intention to dispose of all the testator's property, but respects paragraph 6 itself by attributing to it a reasonable and helpful meaning.

Another consideration favors the construction we have indicated. It is this: The estate is shown to be indebted. If the testator died intestate as to a part of his estate, administration would be necessary or at least authorized, and there would then be the anomalous and unusual situation of an independent executor as to part of the estate and a statutory administrator with respect to another part. It is hardly to be conceived that the testator intended such a result. This, however, is but another reason for the existence of the rule already referred to that the presumptions are against partial intestacy.

For the reasons indicated, we recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the trial court be here affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.