**JOHNSON et al. v. MOORE et al.**
**No. 9753.**

Court of Civil Appeals of Texas. Austin.
July 6, 1949.

Rehearing Denied Oct. 5, 1949.

Black & Stayton, of Austin, for appellant.

Goldsmith & Bagby, by Arthur Bagby, Dan Moody, J. B. Robertson, all of Austin, for appellee.

HUGHES, Justice.

In this suit we are asked, primarily, to determine the character of estate received in certain lands by a father under the will of his son.

Stated a little less generally the question is whether the father who was devised an estate in remainder in these lands by the will of his son, subject to a life estate in the son's wife, received a vested estate which he could transmit by will when he did not survive the life tenant. The answer, of course, lies in a proper construction of the son's will.

In the event the father did receive a vested estate in remainder under the will of his son, then it will be necessary to also construe the will of the father.

The son was R. W. Castleman who died in 1906. The father, R. M. Castleman, died in 1920. The life tenant, Mrs. Lena Castleman, the widow of the son, died in 1947.

The parties to the suit are all of the heirs of the two deceased sisters of the son, R. W. Castleman. Appellants are the heirs of Mrs. Anna Mitchell and appellees are the heirs of Mrs. Margaret Bull.

It is agreed that the parties to this suit own the full title to the lands involved, the dispute being as to interest owned, respectively, by each set of heirs; appellees claiming to own an undivided ¾ interest therein and conceding that appellants own the remaining ¼ interest; whereas appellants claim that they own an undivided ½ interest therein and appellees the other ½ interest.

Appellees' claim to a ¾ interest is based on the agreed fact that Mrs. Bull received a ¼ interest under the will of her brother, R. W. Castleman, and the disputed fact that the father, R. M. Castleman, received a ½ interest under his son's will which he in turn devised to his daughter Mrs. Bull.

Appellants' claim to a ½ interest in the property is based upon the agreed fact that Mrs. Mitchell received a ¼ interest under the will of her brother, R. W. Castleman, and the disputed fact that she received another ¼ interest under the terms of such will.

Before setting out and discussing the controversial provisions of the son's will it is necessary for a better understanding of the language used therein to explain that the son's estate fell into two unusual but important categories which, because of their nature, required different treatment in the will. These categories are referred to by the parties as "inherited" property and "owned" property.

The "inherited" properties were those which the son acquired under the will of his grandfather, Alfred Smith, and his mother, Mrs. Amelia E. Castleman. Both of these wills gave R. W. Castleman (the son) only a life estate in the properties left him, but they each provided that should he die leaving a wife surviving but no surviving child or children then that he had the power of disposition of such property by deed, will, or otherwise as he thought best.

The "owned" property is all the property owned by the son at the time of his death, except the "inherited" property.

The son, R. W. Castleman, died leaving a surviving wife but no surviving child or children or their descendants.

Only the "inherited" property is involved in this suit. The will of the son, R. W. Castleman, after reciting the power of disposition given him under the wills of his mother and grandfather, gave to his wife, Lena Castleman, a life estate in all of his property, both "owned" and "inherited", subject to defeasance upon her remarriage. The will also provided for the eventuality of children, and then follow the provisions which gave rise to this controversy, and which we quote: " * * * Should no child survive me, by which is meant be born alive, then it is my will that the remainder after the expiration of the limited estate herein vested in my said wife, in all property of all kinds, real, personal and mixed and wheresoever situate, both that owned in my own right and bequeathed to me in the wills of my said mother and grandfather shall vest one-half in my father R. M. Castleman and one-fourth each in my sisters Anna Mitchell and Margaret Bull and in their heirs and I here so give,

devise and bequeath such remainder interest and estate in all of said property. And this bequest of remainder interest shall also apply in the event a child or children shall be born alive but shall not be alive at the expiration of the limited estate vested in my wife in property which I own in my own right as above provided. If such child, children, or their descendants shall be so alive at the termination of my said wife's limited estate in property so owned by me in my own right, then it is my will that such remainder estate in such property shall vest in such child, children or their descendants (per stirpes) but if such child, children or their descendants shall not then be alive, then I here give, devise and bequeath such remainder estate in all so owned by me, one-half to my said father and one-fourth each to my said sisters, and in the event my father shall not then be alive the whole shall vest in my said sisters, and in the event of the prior death of either of them, shall vest in her descendants."

It is apparently conceded by appellants, but if not conceded, the law is, that considering only the first sentence of the above quotation, as applied to the undisputed facts, that the father, R. M. Castleman, immediately upon the death of his son, became vested with a remainder estate in fee in all the property, both "owned" and "inherited", of the son, subject only to the limited life estate given the surviving wife. This because in our opinion the word "heirs" is referable to R. M. Castleman as well as to the sisters. Also because the result would be the same if the word "heirs" was not so referable. Art. 1291, Vernon's Ann.Civ.Stats.

Notwithstanding this effect of the first sentence of that portion of the will copied above, appellants earnestly argue that the remainder of such quotation evidences a clear intention on the part of the testator that his father should receive no interest in the properties devised him unless he was living at the time of the death of his son's wife, the life tenant, and that this intention should control our decision.

■ We do not believe the will, the whole will, contains any language from which we can reasonably draw the conclusion that the testator had the intention appellants ascribe to him.

■ It is not enough that we may not understand why a testator does or does not make a particular disposition of his property. Our duty is to conscientiously read the words of the will and implicitly obey them as far as we are given the power to understand the language used, except in cases where a positive rule of law or of public policy is violated. We abhor the thought that we might unwittingly rewrite the will of a decedent.

It is clear from the will that the testator fully understood the nature of the estate left him by his mother and grandfather, and knew that if he, the testator, died leaving a child that such child would take the property in fee. The testator, also, in the will, repeatedly recognized the possibility that a child of his might survive him. The testator was aware, too, that he might own properties other than those acquired by inheritance at the time of his death.

With these matters in mind the following disposition of his estate, "owned" and "inherited", was made:

(1) His wife was given a life estate (terminable on remarriage) in "owned" and "inherited" properties, and the failure of the life estate in the "inherited" property by reason of a surviving child was not to affect the life estate in the "owned" property.

(2) A vested remainder in the "owned" property was given his child or children in the event he or they were alive at the time of the death or remarriage of the mother.

(3) In the event the testator left no surviving child then the remainder in the "owned" as well as in the "inherited" property should go ½ to the father and ¼ to each of his two sisters.

(4) As to the "owned" property the remainder should go as in (3) above, in the event a child survived the testator but was

not alive when the mother remarried or died.

We find this to be the clear and only meaning which can be given to the language: "And this bequest of remainder interest shall also apply in the event a child or children shall be born alive but shall not be alive at the expiration of the limited estate vested in my wife in property which I own in my own right as above provided."

This follows from a consideration of the will as a whole, the place in the will where this sentence appears (supra), and because it supplements the disposition made of this remainder in (2), above.

(5) If a child or descendants of a child of the testator be alive at the death or remarriage of the surviving wife of the testator, then the remainder in the "owned" property should go to such child or descendants.

(6) If no child nor the descendants of any child of the testator be alive at the death or remarriage of his surviving wife, then the remainder in the "owned" property should go ½ to the father, in the event he be alive at such time, and ¼ to each of his two sisters, but if his father not be alive at such time then the whole of such remainder in the "owned" property should go to the two sisters or their descendants.

The only repugnancy, conflict, inconsistency or ambiguity which may be present in this will are all with reference to the "owned" property, as the above analysis of the disposing provisions of this will plainly demonstrate, and with such property we are not here concerned.

As to the "inherited" property there is no provision in the will which either directly, indirectly, or remotely detracts, qualifies, limits or modifies the remainder estate devised the father in the event the testator died with no child surviving, and having so died this remainder immediately vested in the father.

■ We find the will to be plain and unambiguous as to the remainder devised the father in the "inherited" property, and hence no rules of construction or consideration of outside circumstances are needed as an aid to determine its meaning in this regard. If the possibly ambiguous provisions relating to the "owned" property are to be considered, the result would be the same under the rule that: "Generally, the greatest estate will be conferred on a devisee that the terms of the devise permit; and when an estate is given in one part of a will, in clear and decisive terms, it cannot be cut down or taken away by any subsequent words that are not equally clear and decisive. At any rate, an estate clearly given in one part of a will cannot be disturbed by a subsequent clause which is ambiguous or uncertain in its meaning. Accordingly a will should not be construed as to diminish or divest an estate therein given unless such a construction is clearly required. A devise of an estate will be deemed a fee simple, unless limited by express words, and a condition which tends to defeat an estate will be strictly construed." 44 Tex.Jur., p. 738.

Having held that the father acquired a vested remainder in the "inherited" property, we must now determine if this property passed to Margaret Castleman Bull under her father's will. If this remainder estate did pass under such will it did so by virtue of the residuary clause because such property was not specifically mentioned in the will. The residuary clause reads: "The residue of my property, real, personal and mixed, and wheresoever situated, which is not herein specifically devised and bequeathed, I here devise and bequeath unto my daughter, Maggie Bull, but the same shall be held by her as a conditional fee or limited estate, as hereinafter set forth, and such residue shall remain in the hands of my executor until the full payment of the legacy of $12,500 provided for in Section 5 hereof."

The legacy mentioned was to the father's granddaughter, Maggie Foster, and the nature of the limitation is not important here.

Appellants claim that the remainder interest involved did not pass under the above residuary clause because (1) R. M. Castleman, the father, was unaware that he owned such remainder and (2) he did not intend to devise an interest in prop-

perty of which he was not in possession. Neither reason, in our opinion, is valid.

We find nothing in this will to indicate that R. M. Castleman was unaware that he owned this remainder except the negative fact that he did not specifically dispose of it. If all of a testator's property is specifically disposed of in the will there would be no need for a residuary clause.

■ On this point we believe the correct rule to be as stated in 60 Corpus Juris, p. 421: "The test of the power of a residuary clause to carry property is whether the property belonged to the testator and not whether he knew that it was his, and one of the functions of a residuary clause is to dispose of such things as the testator may have forgotten or overlooked or his possession of which may have been unknown to him. Thus it is no ground for excluding property from a residuary clause that the testator did not know or believe that he had title to it."

■ Also, since there is no language in this will which indicates that the testator intended to die intestate as to any of his property, the presumption against partial intestacy must prevail. Bittner v. Bittner, Tex.Com.App. 45 S.W.2d 148; 44 Tex.Jur., p. 707, et seq.

The point that the testator did not intend to devise an interest in property which he was not in possession is based upon directions found in the will concerning the duties of the executor, for instance, the will authorized the executor "to take possession and control" of testator's property and to "hold the same"—and to "make such repairs and improvements thereon while so remaining in his possession as the said acting executor shall consider advisable or necessary to preserve and maintain all of said property in proper tenantable condition * * *."

■ These directions and authorizations to the executor are just what they purport to be. They do not alter, amend nor affect any bequest or devise made in the will. They merely give directions to the executor for carrying these bequests and devises into effect. Besides "possession" can be constructive as well as actual. The execu-

tor had such possession of the remainder estate as its nature would permit.

The trial court having construed the wills in accordance with the views expressed in this opinion, his judgment is affirmed.

Affirmed.

ARCHER, C. J., not sitting.