**Waggoner CARR, Attorney General of Texas, Petitioner,**

v.

**Winnie Slaughter ROGERS et al., Respondents.**

No. A–10127.

Supreme Court of Texas.

Oct. 21, 1964.

Rehearing Denied Nov. 18, 1964.

Waggoner Carr, Atty. Gen., Austin, J. S. Bracewell, C. L. Snow, Jr., J. Arthur Sandlin, Asst. Attys. Gen., for petitioner.

Tilley, Hyder & Law, Robert M. Randolph, Fort Worth, for respondents.

CULVER, Justice.

The duly appointed executors of the estate of Birdie H. Frey brought this suit to have the court construe Mrs. Frey's holographic last Will and Testament. The only question presented here is whether or not Mrs. Frey died intestate as to a part of the property she owned at the time of her death. The trial court answered this question in the negative. The Court of Civil Appeals, one justice dissenting, reversed, holding that the Will as properly construed did not dispose of the entire estate. 376 S.W.2d 413.[1]

Mrs. Frey, at the time of her death, had been a widow for a number of years. So far as legal heirs are concerned she is survived only by nieces and nephews. The Will was executed by Mrs. Frey at the age of 83 in 1958, about three years before her death.

After providing for the payment of debts and funeral expenses she bequeathed $7,000.00 to each of four nieces and a nephew. She then devised to Mrs. Naoma Frey Hickie, whom she referred to as "Daughter", formerly the wife of Mrs. Frey's deceased son, all of her mineral interests. Next she placed in trust 95 shares of bank stock valued in excess of $50,000.00, to be used for local charitable purposes. After appointing Paul and Naoma Hickie as administrators (executors) Mrs. Frey concluded her Will as follows:

"I desire that Leona Gray Harris receive my piano, her residence Ozona, Texas. My other belongings, dishes, crystal ware, silver, bric a brac to be distributed by Naoma Frey Hickie, Isa-bella Guffey, Elizabeth Watson—the surplus to be sold and the money added to Charity Fund."

It is this quoted provision that creates the problem.

The inventory shows that the estate consisted of United States bonds, $30,000.00; bank stock $53,000.00; Texas Power & Light Company stock $467.00; cash in bank $36,923.00; real estate in the City of Stephenville, including decedent's residence, $15,000.00; mineral interests $4,913.90, and a couple of unvalued residential lots.

The respondent heirs contend, and the Court of Civil Appeals held, that the word "surplus" referred to "other belongings, dishes, crystal ware, silver, bric a brac." On the other hand the Attorney General insists that by the use of the word "surplus" Mrs. Frey intended to have sold and added to the charity fund all the residue of her estate of whatever nature, consisting of some $30,000.00 in United States bonds, four lots and two houses, having a value of approximately $15,000.00; two additional lots of undetermined value, the Texas Power & Light Company stock, and whatever cash might remain in bank after payment of $35,000.00 to the nieces and nephew.

While the rule is well established that, where a person makes a will, the presumption prevails that the testator intends to dispose of all of his property and not die intestate as to any part thereof, that rule and all others of a like nature yield to the cardinal rule that the intention of the testator controls when ascertained from a consideration of the entire Will. Bittner v. Bittner, 45 S.W.2d 148, Tex.Com.App., 1932; Huffman v. Huffman, 161 Tex. 267, 339 S.W.2d 885, 1960.

In seeking to determine the testatrix' intent we are limited here to a determination of that intent from the language used by her in the written Will. In other

1. In the Court of Civil Appeals opinion the Will of Mrs. Frey is set out verbatim and it is unnecessary to do so here.

words the intention must be ascertained from the words in the instrument itself and where a testator fails to provide for the disposition of all of his property, whether by intent or not, it must be held that the testator died intestate as to such omitted property. Fain v. Fain, 335 S.W.2d 663, Tex. Civ.App., 1960, wr. ref.

The presumption as to partial intestacy is only one of the factors, as said by the Court of Civil Appeals, to be considered in arriving at the intention of the testatrix. It cannot be used to add to or change the express language contained in the Will. Kostroun v. Plsek, 15 S.W.2d 220, Tex.Com.App., 1929. But the rules do not require any strained unnatural construction in order to prevent the generally undesired result of partial intestacy. To the contrary only that construction should be arrived at which is reasonably compatible with the words employed by the testator. Rogers v. Nixon, 275 S.W.2d 197, Tex.Civ. App., 1955, wr. ref.; Briggs v. Peebles, 144 Tex. 47, 188 S.W.2d 147.

The Attorney General cites Johnson v. Moore, 223 S.W.2d 325, Tex.Civ. App., 1949, wr. ref., for the proposition that where there is no language in a will which indicates that the testator intended to die intestate as to any part of his property, the presumption against partial intestacy must prevail. While the proposition has authoritative support, it does not mean that the testator must expressly indicate that he intends not to dispose of all of his property, but if the language in the will clearly indicates that some of the property has not been disposed of, partial intestacy will be upheld. The facts of that case have little bearing here. The residuary clause read as follows:

"The residue of my property, real, personal and mixed, and wheresoever situated, which is not herein specifically devised and bequeathed, I here devise and bequeath to my daughter, etc."

The testator could hardly express more positively his intention to dispose of all of his property.

As meticulous and careful as Mrs. Frey was in designating the recipients of her bounty, it is, to our minds, wholly unreasonable that she would, in the concluding paragraph of her Will in making disposition of her household effects of comparatively little value intend to include the bonds and real estate which comprised about one-third of her total estate without making any reference to them expressly in any manner.

The Attorney General lays considerable emphasis upon Mrs. Frey's charitable nature, and her very generous contributions during her long life, to charitable organizations, both local and nationwide. He also argues that the Will disclosed no intention on the part of Mrs. Frey that these collateral heirs receive any more of her estate than she had expressly bequeathed to them. But while we agree in both of these respects, we fail to see how either has any bearing upon the determination of what she meant by the use of the term "surplus" in the last paragraph or whether she intended to dispose of the bonds and real estate by having them sold and "the money added to the charity fund." It will not do to say that since the Will does not show any intention on Mrs. Frey's part that her nieces and nephew were to have more out of the estate than the $7,000.00 bequeathed to each, and Mrs. Frey displayed a great interest in charity, ergo there is inferred an intention that the residue of her estate not otherwise disposed of would be left to charity. He argues that if Mrs. Frey had wanted her bonds and her 60-year old home to go to the heirs she would have said so. Obviously the same argument would be applicable as well to the thought that if Mrs. Frey had intended the word "surplus" to refer to the residue of her estate, including the bonds and real estate, she would have said so.

The argument is that the last words in the paragraph beginning with "the surplus

to be sold, etc." have no connection whatever with the foregoing mentioned belongings, dishes, crystal ware, etc. It is argued that the dash before the words "the surplus" indicates a new sentence to follow and introduces a new thought, wholly disconnected from the remainder of the paragraph. From an inspection of the Will we believe that conclusion is not borne out.

There seems to be no attempt on the part of Mrs. Frey in drawing the Will to use punctuation marks in grammatically accurate fashion. In some instances she seems to use the dash in lieu of a period, and at other times in place of a comma. But throughout the Will it is apparent that when she intentionally begins a new sentence she uses the capital letter and in none of the several paragraphs in the Will does she make any such sudden departure in thought as the Attorney General ascribes to her in the last paragraph. It is significant, we think, that the dash in this last paragraph is not followed by a capital letter.

Aside from those decisions which set forth the general rules that may be applicable, the Attorney General, from a factual standpoint, relies heavily on two cases, the first being that of Urban v. Fossati, 266 S.W.2d 397, Tex.Civ.App., 1954, ref. n. r. e., which he says is squarely in conflict with the decision of the Court of Civil Appeals here. In that case the unlettered testatrix directed her nephew to sell her home and collect her insurance policy; to pay her debts and give certain churches and schools small sums of money. She then provided that "what is left devid even with Nazareth Academy Schoo and St Joseph School. (Sic) Thank you very much this is my Last Will And Testament.". It appears that the home and the life insurance came to $10,-000.00. Other assets consisting of cash, stocks and bonds, amounted to a little over $10,000.00 so that only one-half of the estate was mentioned in the Will. Nevertheless the court held that the provision quoted above was sufficient to dispose of the entire estate, suggesting that the words "what

is left" are tantamount to "all of the rest and residue of my estate."

Although we concede a similarity in the facts of the two cases and the persuasive argument of the Attorney General based thereon, nevertheless we think there is a distinction to be drawn. The nephew was instructed to sell the home and collect the insurance. From that source he has ample funds to pay the special bequests. Other cash, stocks and bonds were on hand; they did not need to be sold and the last paragraph, instructing him to divide what is left between the two schools, could very well have been considered a separate paragraph unconnected with any previous instructions. In any event, however, we decline to apply the holding to the facts in the case before us here.

The other case is that of Glover v. Glover, 321 S.W.2d 804, Tex.Civ.App., 1960, no writ, which the Attorney General says is "very near to being squarely in point." Oddly enough the opinion in Glover is authored by the same justice who wrote the opinion in the case which the Attorney General here attacks. In Glover the court held that the testator intended for his brother, Carl, to receive all the money above $35,000.00 obtained from the sale of all the properties mentioned instead of sustaining the contention that the testator intended to give Carl only the money in excess of $35,000.00 obtained from the sale of the Mt. Vernon property alone. If the latter construction prevailed the court reasoned that the testator well knew that the Mt. Vernon property would not bring anything near $35,000.00. We fail to see how that decision casts any light on the question we have here other than in respect to the applicable rules of construction which are recognized by all parties.

No two wills are drawn exactly alike or with the same provisions and as said in Sailer v. Furche, 22 S.W.2d 1065, 1068, Tex. Com.App.:

"[E]ach case must depend upon the ascertainment of the intention of the

testator *as manifested by the language used by him in making the disposition of the property involved.*" (Italics ours.)

If Mrs. Frey intended by the use of the word "surplus" to dispose of the residue of her estate then why would she insist on having the United States bonds and the Power & Light shares sold? The proceeds derived from the sale under the terms of the trust would impliedly have to be reinvested since she provided that expenditures by the trustee be made from the income or profits of the trust estate.

To adopt the Attorney General's position would be to say that when Mrs. Frey provided that "the surplus to be sold and the money added to charity fund" she thereby intended to add to the charity fund property to the value of more than $45,000.00, almost as much as she had expressly set up as the charitable trust fund in the first place. We agree with the Court of Civil Appeals that such a construction is unreasonable, is no more than a guess and would result in the court making a disposition of the property rather than the testatrix. Certainly Mrs. Frey was not oblivious to the fact that she owned these bonds as well as the home in which she lived. In fact she mentioned the bonds in the Will in connection with the bequests to her nieces and nephew. But it matters not whether the omission was intentional or inadvertent, the Will reveals no intention to dispose of those properties and so omitted, they will descend to her heirs according to the laws of descent and distribution. In our opinion that result is much to be preferred over the indulgence in guesswork.

In this analysis we are re-enforced by a consideration of the terms of a codicil placed on the Will by Mrs. Frey some three months later. In this codicil she was again concerned with the personal effects disposed of in the last paragraph of her Will. That codicil reads as follows:

"All of this Roger's Silver Ware was presented to me by The Simon's Hard-ware Co. of St. Louis, Missouri, while we were attending the World's Fair in that City 1903.

"Mr. Frey was in the China and Hardware business at that time and was a good customer of their.

"At my death either sell it—or give it some *worthy* person.

"All of my relatives from top to bottom own *Sterling* and lots of it."

The Rogers silver was something that none of her heirs would desire to have. All of her relatives, as she said, owned Sterling silver and lots of it and therefore would not care for plated silver. So she directed that it be either sold or given to some worthy person. We conclude that this silverware is a part of the "surplus" that she is speaking of in the last paragraph of her Will.

This bears out the fact that Mrs. Frey expected that there might be some of these belongings and personal effects which her beneficiaries would not want, leaving a surplus to be sold and the small amount received therefrom to be added to the charity fund.

Under the rule of construction known as that of ejusdem generis the term "belongings" used in the last paragraph of the Will would be limited to and include only such things or objects as are of the same kind and classification as those specifically enumerated, and would not be construed to include real estate, stocks and bonds. Farmers' and Mechanics' National Bank v. Hanks, 104 Tex. 320, 137 S.W. 1120, 1911; Dallas Consolidated Electric St. Ry. v. City of Dallas, 260 S.W. 1034, Tex.Com.App., 1924; Bailey v. Texas Indemnity Ins. Co., 14 S.W.2d 798, Tex.Com.App., 1929; Employers' Casualty Co. v. Stewart Abstract Co., 17 S.W.2d 781, Tex.Com.App., 1929; Shelton v. Thomas, 11 S.W.2d 254, Tex. Civ.App., 1928; Stanford v. Butler, 142 Tex. 692, 181 S.W.2d 269, 153 A.L.R. 1054, 1944.

When Mrs. Frey wrote the last paragraph of her Will she intended for those effects such as she specified to be distributed among those for whom she had provided in her Will and should there be any of those things not wanted they were to be sold and such small sum added to the capital of the trust fund. That to us seems to be the only reasonable construction to be placed upon this paragraph.

The judgment of the Court of Civil Appeals is affirmed.

GRIFFIN, Justice (dissenting).

I cannot agree to the majority opinion and therefore file this dissent.

The majority say that when Mrs. Birdie Frey used the word "surplus" in the concluding paragraph of her will, she referred only to her dishes, crystal ware, silver and bric-a-brac. This cannot be the correct construction of that word "surplus."

To begin with Mrs. Frey says, "My other belongings, dishes, crystal ware, silver, bric-a-brac to be distributed by Naomi Frey Hickie, Isabella Guffey, Elizabeth Watson * * *." The words "to be distributed" mean by all definitions that the three named parties shall divide the enumerated items as they see fit and give them to whomsoever the three see fit. That direction is not that the three shall "distribute a part" of the other belongings, dishes, etc., but is a direction that *all* of the enumerated items are to be divided, given, allotted, or apportioned within the discretion of the three named parties.

Webster defines "distribute" as meaning "to divide among several of many; deal out; apportion to members of a group or over a period of time; allot; * * * dispense; etc., etc.," Webster's New Third International Dictionary Unabridged, 1961. See also Great Atlantic & Pacific Tea Co. v. City of Richmond, 183 Va. 931, 33 S.E. 2d 795, 802; In re Baldwin's Estate, 69 Cal.App.2d 760, 160 P.2d 124, 127.

If this clear direction is carried out, there is left no "surplus" of these items to be sold and the money added to the charity fund. Therefore, the "surplus" provision as construed by the majority is in conflict with the next immediate direction that a "distribution" of the named items be made. To so construe this clause violates the fundamental rule of construction that it is the duty of the courts to so construe wills or other written instruments that there will be no conflict in the various provisions of the will, and that all provisions will be harmonized. This rule is so fundamental and well recognized that no citation of authorities is needed to support it. Also, the majority construction of "surplus" makes that phrase meaningless provided the three distributors carry out the intention of the testatrix to distribute the named property. The majority argument that the codicil sustains their construction is not logical. The codicil directs that the silver therein described be distributed to others than her relatives either by gift or by sale.

For the sake of argument, granted there would be some of the enumerated items the three distributors could not get anyone to accept; e. g., two or three chipped cups with broken handles, a few crazed plates and saucers, a cracked glass or so, a chair or two with one leg broken and the bottom out, a porcelain figurine with a broken leg or arm. What was undistributed would of necessity have to be worthless, otherwise, someone would accept it and there would be no surplus to distribute. Granted there would be a few worthless things left over and that no one would have these—and this we must assume from the majority opinion—then the sale of this so-called "surplus" would bring only a mere pittance —perhaps $5.00 or $10.00 at the most optimistic figure. This is all that would be added to the charity fund.

How incongruous with the desire of Mrs. Frey as shown by the rest of her will. Her will shows she was most interested in charity and was not accustomed to giving grudgingly, sparingly or parsimoniously to

charity. She was magnanimous and generous with her gifts. The evidence shows that for the last ten years of her life, she had given more than 80% of her yearly income to charity. To say she wanted to add only the value of a few broken and worthless pieces to her charity fund is not only illogical, it is entirely contrary to her life and to the terms of her will.

To give this paragraph the construction of the majority violates. many other fundamental legal rules, among which is that such construction makes Mrs. Frey die intestate to a large share of her estate. This in the face of the very opening paragraph of Mrs. Frey's will, to-wit:

> "I, Birdie Hartsough Frey, of the City of Stephenville, County of Erath, State of Texas, being of sound and disposing mind, memory and discretion, do hereby make and publish this, my last will and testament, hereby revoking and making void any provisions made at any time heretofore."

In this suit, the trial court was requested to answer the following question: "Are the executors directed to sell all the residue of the estate of Birdie Hartsough Frey and deliver the net proceeds, after all expenses, to the Fort Worth National Bank of Fort Worth, Texas, as trustee, said proceeds to become a part of said trust fund?" To this question the trial court answered in the affirmative, with this addition: "* * * and the court specifically finds and holds that the will and codicil of said testatrix disposed of her entire estate and that she did not die intestate as to any portion thereof."

We start out with certain fundamental principles of law that must guide us in our construction of the will:

First: Where testatrix leaves a will, this shows an intention she did not intend to die intestate. Ferguson v. Ferguson, 121 Tex. 119, 45 S.W.2d 1096, 79 A.L.R. 1163 (1931); Kuehn v. Bremer, 132 S.W.2d 295 (Tex.Civ.App.1939, writ refused); Kostroun v. Plsek, 15 S.W.2d 220(2–4) (Comm. of App.1929); 44 Tex.Jur. p. 707, Wills, § 148.

Second: Where a person makes a will, the presumption prevails that a testatrix intended to dispose of all her property, if the words used in the will may carry the whole of her property. Briggs v. Peebles, 144 Tex. 47, 188 S.W.2d 147 (1945); Ellet v. McCord, 41 S.W.2d 110 (Tex.Civ.App. 1931, writ refused); Casey v. Kelley, 185 S.W.2d 492 (Tex.Civ.App.1945, writ refused); Crites v. Faulkner, 245 S.W.2d 1013 (Tex.Civ.App.1952); Urban v. Fossati, 266 S.W.2d 397 (Tex.Civ.App.1954, n. r. e.).

Third: Where a provision of a will is fairly open to more than one construction, a construction resulting in intestacy, either in whole or in part, will not be adopted if by any reasonable construction it can be avoided. Kuehn v. Bremer, supra; Ferguson v. Ferguson, supra; Urban v. Fossati, supra; 95 C.J.S. Wills § 615b, p. 834.

Fourth: One who insists upon the partial intestacy must be in a position to show that the will clearly intended that the testator should die intestate. Unless we are pointed to something which clearly expresses or necessarily implies intestacy, the presumption of testacy will prevail. Johnson v. Moore (Tex.Civ.App.1949, writ refused), 223 S.W.2d 325; Boone v. Stone, 142 S.W.2d 936 (Tex.Civ.App.1940, no writ history); Ellet v. McCord, supra; 44 Tex. Jur. 707, Wills § 148; Urban v. Fossati, supra.

It has been said that the presumption that a person making a will intended to dispose of the whole of his estate, is particularly strong when the subject of the gift is the residuary estate. Urban v. Fossati, supra; 17 A.L.R.2d 654–655.

There is no language in the will that indicates Mrs. Frey did not intend to dispose of the whole of her estate.

The reasoning of the court in the case of Urban v. Fossati, 266 S.W.2d 397 (1st col.

399), Tex.Civ.App.1954, n. r. e., with regard to the application of the "ejusdem generis" rule is particularly appropriate here:

"To overcome the presumption which places a burden upon the claimants to show clearly or by necessary implication that the testatrix intended partial intestacy, appellants call upon the ejusdem generis rule. The ejusdem generis rule, it is claimed, would restrict the words 'what is left' to mean what is left out of the special fund composed of the proceeds from the sale of the home and the insurance policy. But that rule, which is often helpful in construing instruments, is applied hesitantly to residuary clauses in wills, for the reason that it usually results in partial intestacy and runs counter to the very thing for which the rule of presumption exists. Note, 128 A.L.R. 826–833." (Emphasis added.)

The majority contend that Mrs. Frey forgot she had the property composing the residue of her estate, and therefore she died intestate as to this property. We cannot say she forgot her Government Bonds in the face of the provision contained in Item 9 of the will specifically mentioning the bonds.

The evidence shows that Mrs. Frey was of good mind, had control and management of her estate up to her death, that she was a strong-willed person, and it is unlikely she would have forgotten the house in which she was living and sitting at the time she made her will.

The construction that the word "surplus" was intended by Mrs. Frey to mean the "rest and residue," "balance," "remainder," "that part of my estate not heretofore disposed of" is a reasonable construction; it will be consistent with the language of the balance of the will; and there is no specific language to the contrary, nor any which necessarily implies "surplus" does not refer to the residue of her estate. Therefore, we hold that it does refer to all of Mrs. Frey's estate not disposed of by enumeration. Mrs. Frey made specific bequests of $7,000.00—no mean sum—to each of her four nieces and to her nephew. There are no words in the will showing an intent that they should receive more.

The language of the will shows that Mrs. Frey was most interested in charitable gifts and bequests. The evidence—set out in full in the Court of Civil Appeals' opinion—demonstrates that using her money for the benefit of others was the controlling passion of Mrs. Frey. As was said in Johnson v. Moore, 223 S.W.2d 325, 329 (Tex. Civ.App.1949, writ ref.):

"We find nothing in this will to indicate that R. M. Castleman was unaware that he owned this remainder except the negative fact that he did not specifically dispose of it. If all of a testator's property is specifically disposed of in the will there would be no need for a residuary clause."

Charitable gifts are favored by the law, and the courts will supply means and methods of carrying into effect a charitable gift or bequest. Powers v. First National Bank etc., 137 S.W.2d 839, 841 (Tex.Civ.App. 1940), affirmed 138 Tex. 604, 161 S.W.2d 273(25), 1942; Boyd v. Frost National Bank, 145 Tex. 206, 196 S.W.2d 497, 503, 168 A.L.R. 1326 (1946).

The dissenting opinion in the Court of Civil Appeals has very clearly and succinctly analyzed the proper construction to be given Mrs. Frey's will, so I see no need of further extending this opinion.

I would reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

CALVERT, C. J., and SMITH, J., join in the dissent.