F. Scott **GLOVER** et al., Appellants,

v.

William **GLOVER**, Appellee.

No. 3489.

Court of Civil Appeals of Texas.

Eastland.

Jan. 29, 1960.

Rehearing Denied Feb. 19, 1960.

Peter S. Solito, Houston, Higgins & Evans, Angleton, for appellants.

Bracewell, Reynolds & Patterson, Roy L. Arterbury, Houston, for appellee.

GRISSOM, Chief Justice.

Louis A. Glover wrote a will on June 30, 1956, without the aid of counsel, apparently using a printed form as a guide. It was as follows:

"State of Texas

"County of Harris

"I, Louis A. Glover of the County of Harris and State of Texas, being of sound mind and disposing mind and memory and being desirous to settle my wordly affairs while I have strength to do so, do make this my last will and testament, hereby revoking all others heretofore made.

"No. 1. I desire and direct that my body be buried in a decent manner suitable to my circumstances and conditions in life, and that a head stone or marker similar to the one now used on our lot be placed at an early date.

"No. 2. I desire and direct that my just debts be paid out of my estate without delay, by my executrix to be hereinafter appointed.

"No. 3. I give, devise and bequeath to the Protestant Trinity Episcopal Church of the Diocese of Texas, A religious Corporation, the sum of $5000.00 Dollars to be designated and known as the Elizabeth Glover, Memorial Fund, that the same shall be invested and reinvested and the income only used in furtherance of the work of the Trinity Church, as the Vestry may determine.

"No. 4. I give, devise and bequeath to Hugh Dickson, the Antique Furniture, hand painted china, and pictures which was given to Elizabeth Glover, by her mother, a list of these will be found in Box 181 in the South Main State Safety Deposit vault.

"No. 5. I give, devise and bequeath to the children of my deceased brother, Dr. Frank Scott Glover, Sr., their names are Norrell, Dr. Frank Scott Glover Jr., and Gloria, the sum of $100.00 Dollars each in cash.

"No. 6. I give, devise and bequeath to the children of my brother Howard Emmitt Glover, their names are Anna May, Frank Florance and William, the sum of $100.00 each in cash.

"No. 7. I give, devise and bequeath to my brother Howard Emmitt Glover, the sum of $500.00 in cash and the unpaid notes, which will be found in Box 181 in the South Main State Bank Safety Deposit Vault.

"No. 8. I give, devise and bequeath to my brother Carl B. Glover the sum of $500.00 Dollars in Cash.

"No. 9. I give, devise and bequeath to my bother William Glover the sum of $7500.00 Dollars. The same shall be invested and reinvested and the income only given to him so long as he lives, and at his death the income shall be divided between the children of Jean Crook, their names are Joan, Carrol, and Joy, and as each becomes of age then 1/3 of the principal shall be paid to her. Should William Glover owe me any money secured by notes or checks and interest thereon then the total sum due me from them shall be deducted from the said $7500.00.

"No. 10. I give, devise and bequeath to my sister, Roberta (Mrs. Goldman Kreamer) the sum of $7500.00 Dollars. The same shall be invested and reinvested and the income only given her as long as she lives and at her death the income shall be paid to her grandchildren. Their names are Gloria Kreamer, Kandyce Kreamer and Sandra Kreamer, when each becomes of age then 1/3 of the $7500.00 shall be paid to her.

"No. 11. I give, devise and bequeath to my Niece Jean Crook the Oriental Rugs and Antique Furniture not already disposed of.

"No. 12. I give, devise and bequeath to my Niece Ann Church the sum of $3500.00 in cash.

"No. 13. I give, devise and bequeath to my Nephew Jim Dickson the sum of $3500.00 in cash.

"No. 14. I give, devise and bequeath to Detroit Hall the sum of $250.00 Dollars in cash.

"No. 15. I direct that the 5 acres in Brazoria County and the south 1/2 of lot 281 in Gloverdale be sold and the funds added to my estate.

"No. 16. I direct that the property at 4522 Mt. Vernon be sold, and all

funds up to $35000.00 Dollars be added to my estate, and any money above the $35000.00 Dollars shall be given to my Brother Carl Glover.

"No. 17. I direct that the property at Austin and Elgin be retained in my estate and that the buildings be rented and that they be kept in good repair. The proceeds from the property be first applied to taxes, insurance, and repairs, and other expenses. At the end of each year money not used in the expense of the property shall be divided as hereinafter specified. At the death of the last surviving brother or sister then the property shall become the property of the Houston Public Library, of the City of Houston. The property shall be sold and funds used in building a small library, in memory of Elizabeth Glover. The building shall be located in the Harrisburg Area, and for white people. Should the Area already have a Library then the Library Board shall select a location.

"No. 18. I direct that Lilian Glover be employed and paid the sum of $40.00 Dollars per month as long as she will place flowers on the graves of Elizabeth Glover and the graves of my Father and Mother. If she declined to do this then other arrangements shall be made. The flowers are to be placed each Sunday morning and on other special days, and it is suggested that the sum of $3.00 or $4.00 Dollars be spent each time and a larger sum on the special days. The money spent for flowers shall be in addition to the monthly allowance.

"No. 19. I direct that any cash not used in settling the estate shall be invested and reinvested and the income used in paying for the flowers, the payment to Lilian Glover and if the income is not sufficient then whatever is needed shall come from the income of the property.

"No. 20. At the end of each year income left over from the property, stocks and bonds after making all payments as above shall be divided as follows, ½ to my brother Carl Glover, ¼ to my sister Roberta Kreamer, and ¼ to my brother William Glover.

"No. 21. I hereby constitute and appoint Mrs. Roberta Glover sole executrix of this will, and direct that a bond be not required of her as executrix.

"No. 22. It is my desire that no other action shall be had in the County Courts in administration of my estate than to prove and record this will, and to return an inventory and appraisement of my estate and list claims.

"In witness whereof, I hereby set my hand this 30 day of June A. D. 1956, in presence of M. C. Fanthans and Hugh Stone who attest same at my request.

"/s/ Louis A. Glover
"Louis A. Glover

"The above instrument was here subscribed by Louis A. Glover, the testator, in our presence, and we at his request and in his presence, sign our names hereto as attesting witnesses.

"/s/ M. C. Fanthans
"/s/ Hugh Stone"

William Glover, a brother of the testator sued the beneficiaries named in said will and the heirs at law of deceased for a declaratory judgment interpreting the will. In a trial to the court, the contention of the plaintiff as to the proper interpretation of the will was sustained. The court held that Carl Glover was the residuary legatee of the estate; that the testator disposed of all his estate by his will and that the testator intended for Carl to have all money in excess of $35,000 obtained for the property mentioned in paragraphs 15 and 16 of his will. F. Scott

Glover and others, nephews and nieces of deceased and one brother, Howard Emmett Glover, have appealed.

Appellants' principal contentions are (1) that the will did not dispose of all the estate and (2) that paragraphs 15 and 16 should be construed to mean that Carl Glover was to receive only the money in excess of $35,000 obtained from a sale of the Mt. Vernon property alone. Appellee contends, and the court found, that the testator intended for Carl Glover to receive all money above $35,000 obtained from the sale of all the properties mentioned in both paragraphs. In support thereof, appellee says that extrinsic evidence made clear the intention of the testator that all funds obtained from the sale of the properties mentioned in paragraphs 15 and 16 should be added and all money in excess of $35,000 should be given to Carl Glover. To sustain appellants' contention that the testator intended to give Carl only the money in excess of $35,000 obtained from the sale of the Mt. Vernon property alone, we would have to conclude that the testator believed when he wrote his will that the value of the Mt. Vernon property was in excess of $35,000. It was shown that the testator, three months before he executed the will, placed a valuation on the Mt. Vernon property of $17,-000. There was no evidence of an increase in its value between that time and the day he wrote the will. There was no evidence that the Mt. Vernon property was worth anything like $35,000, nor that the testator believed it had such value. It is evident that the testator, who was specially fond of Carl, his youngest brother, did not intend to make a hollow mockery of pretending to give him money by providing that he was to have all above $35,000 that the Mt. Vernon property alone sold for, when it was evident, and the testator knew, that its value was about half that amount. The court had ample support for its conclusion that the testator intended that all funds derived from the sale of properties mentioned in paragraphs 15 and

16 should be added and all above $35,000 given to Carl. It is undisputed that the relationship between the testator and Carl was very friendly; that Louis had assisted him financially on many occasions; that during testator's last years, particularly after the death of his wife, he often visited Carl at his small suburban grocery, stayed with him until closing time and that Carl and William habitually visited Louis in his home and that the relationship between said three brothers was very friendly and intimate, while testator's relationship with the other parties to the suit was not. The evidence showed that Louis was an architect, William a lawyer and F. Scott Glover, Sr., deceased, a third brother, a doctor; that Carl did not obtain a university education; that he had failed in several businesses and Louis had always come to his rescue; that Carl was indebted to Louis at the time he wrote his will, but he did not require Carl to account for his debt in receiving the property given him, although he did make such requirement of William. Further demonstrating his special affection for Carl, in paragraph 20 the testator provided that the annual net income from "property, stocks and bonds", after making payments specially provided for, should be divided ½ to Carl, ¼ to his sister Roberta and ¼ to his brother William. We think it is evident that when the testator wrote paragraphs 15 and 16 he intended to provide for the sale of enough real estate to accumulate $35,000 in cash to take care of special money bequests and pay anticipated expenses incident to his death and the disposition of his estate. We think the court correctly concluded that the testator intended to make Carl the residuary legatee of his estate.

Under point three, appellants say the court erred in finding that the testator bequeathed to William, Carl and Roberta his stocks and bonds. It is doubtful whether the point should be considered. The holding, however, was simply that since the will expressly gave them a life estate in the stocks and bonds without

provision for a remainderman, or for a "gift over" at their death, that the legal effect was a gift of the stocks and bonds. There is sufficient money to pay the specific bequests and there is no need to resort to the sale of the stocks and bonds. We believe, as the trial court held, that the testator intended for Carl to be his residuary legatee and that he did not intend for any of his heirs at law to take any of his property under the law of descent and distribution. In his will he gave his heirs at law what he apparently wanted them to have. There is no reason to believe that he intended for them to acquire more of his estate under the law of descent and distribution. The language of the will may, we think, be fairly construed to dispose of the whole estate. There is then no presumption of an intent to die intestate as to any of his estate. The presumption is to the contrary. Briggs v. Peebles, 144 Tex. 47, 188 S.W.2d 147; Grant v. Stephens, Tex.Civ.App., 200 S.W. 893.

■ We think the court did not err in holding that the stocks and bonds became the property of those bequeathed a life estate therein. This was a holding that a devise of a life estate, without a remainderman, passed title to the stocks and bonds to the named legatees. Our Supreme Court said in McNabb v. Cruze, 132 Tex. 476, 125 S.W.2d 288, 289: "It is * * * settled that as regards personal property language which usually confers a life estate, unless followed by a gift over, vests title absolutely." The court found that the testator in bequeathing "property, stocks and bonds" intended to include under the doctrine of "ejusdem generis" all revenue producing property not otherwise disposed of. We think this was correct. See Benson v. Greenville Nat. Exchange Bank, Tex.Civ.App., 253 S.W.2d 918, 928; 96 C.J.S. Wills §§ 748, 785, pp. 143, 198; 137 A.L.R. 214; Goggans v. Simmons, Tex.Civ.App., 319 S.W.2d 442 (Ref. N. R. E.)

Had testator desired that the law of descent and distribution direct the disposition of any of his property he would not have so carefully appraised his property and then painstakingly divided it among his heirs at law as he did in his will. The testator was not skilled in the drafting of wills and the language used, taken alone, might not compel the disposition made; but, with extrinsic evidence showing testator's relationship to the parties, his valuation of the properties and all the circumstances surrounding his execution of the will, the judgment of the trial court seems required. We have considered all of appellants' points. They are overruled. The judgment is affirmed.