**Winnie Slaughter ROGERS et al., Appellants,**

**v.**

**Paul HICKIE et al., Appellees.**

**No. 3839.**

Court of Civil Appeals of Texas.

Eastland.

Feb. 7, 1964.

Rehearing Denied March 13, 1964.

Tilley, Hyder & Law, Ft. Worth, for appellant.

J. Arthur Sandlin, Asst. Atty. Gen., Austin, for appellee.

GRISSOM, Chief Justice.

This is a suit to construe an holographic will.

In a trial to the court, it was held that real estate and bonds of the testatrix which were not specifically disposed of in her will had been devised and bequeathed to a bank in trust for local charities, and that the will disposed of her entire estate. The testatrix' heirs at law have appealed.

Mrs. Frey, in July, 1958, at the age of 83, executed a will and, in October, 1958, a codicil thereto, as follows:

"I, Birdie Hartsough Frey, of the City of Stephenville, County of Erath, State of Texas, being of sound and disposing mind, memory and discretion, do hereby make and publish this, my last will and testament, hereby revoking and making void any provisions made at any time heretofore.

I desire that all my just debts be paid as soon as it conveniently may be after my demise. (At this date I owe no one.) I

desire that my funeral expenses may not exceed, four hundred dollars, if possible.

Item 1—I give and bequeath the following legacies to the several persons hereafter named, to my nieces and nephew first—

Item 2—To my niece Winnie Slaughter Rogers of Haines City, Florida, or her heirs, the sum of Seven Thousand ($7,000.-00) dollars.

Item 3—To my niece Elizabeth Slaughter Watson, Austin, Texas, or her heirs the sum of Seven Thousand ($7,000.00) dollars.

Item 4—To my niece Mary Jo Slaughter Townsend of Haines City, Florida, or her heirs, the sum of Seven Thousand ($7,000.-00) dollars.

Item 5—To my nephew Solomon Robert Slaughter of Texas City, Texas, or his heirs, the sum of Seven Thousand ($7,000.-00) dollars.

Item 6—To my beloved niece Isabella Hartsough Guffey, 301 Elm Cove, Abilene, Texas, the sum of Seven Thousand ($7,000.-00) dollars. If she is not living at the time of my demise, I wish this sum to go to her husband, Theron Guffey, *my friend,* every ones friend. If he is not living, I want this sum to go to the Salvation Army, Dallas, Texas.

Item 7—I give, devise and bequeath to my beloved daughter Naoma Frey Hickie, *all* of my *Oil, Gas* or *other mineral rights* of *what ever nature* and *where-soever situated—all* interests, royalties or dividends accruing therefrom, *forever.*

Item 8—My stock in the Farmers First National Bank of Stephenville, Texas: (At this date consists of 95 shares)—I desire that these shares be held in trust by the Trust Department of the Fort Worth National Bank, Fort Worth, Texas, and that all profits accruing therefrom shall be used each year, as follows—

First $25.00 per month to be paid to a competent man for the proper care of my burial plots, situated in the East Memorial Cemetery of Stephenville, Texas—The W. H. Frey and Hartsough lots—The Capt. John A. Frey, Sr's family plots—My plot adjoining the W. H. Frey plot to the East, two spaces of which I have given to Mr. and Mrs. D. G. Hunnewell and the remaining spaces to Paul and Naoma Hickie.

Item 9—The remaining income from Bank Stock may be set up as a Birdie Hartsough Frey Memorial Fund (Because Naoma wanted it so identified) and *from this* fund I desire that the following donations be made yearly to the Bethel C. M. E. (Colored Methodist) Church of Stephenville, Texas, and the St. John Baptist Church (Colored) of Stephenville $150.00 on Easter Sunday, each year.

Item 9—The remainder from the income to be used to assist worthy local charities, this fund to be contributed at the discretion of the Board of Directors of the Farmers First National Bank of Stephenville, Texas.

Important, I desire that Paul and Naoma Hickie shall act as administrators of my Estate, *without Bond,* and that a reasonable percentage of the estate be used to reward them for their labor. If cash in the Bank is insufficient to pay the legacies to my nieces and nephew, I desire Government Bonds be sold and *that these legacies be paid without any delay.*

Extra Important—any beneficiary, contesting *any part* of this will, shall forfeit *all benefits* at once.

I desire that Leona Gray Harris receive my piano, her residence Ozona, Texas. My other belongings, dishes, crystal ware, silver, bric a brac to be distributed by Naoma Frey Hickie, Isabella Guffey, Elizabeth Watson—the surplus to be sold and the money added to Charity Fund.

Written this the 17th day of July, 1958.

Birdie Hartsough Frey

Witness—Jack Henderson

Witness—Mrs. Jack Henderson

Witness—Miss Mary Jones.

All of this Roger's Silver Ware was presented to me by The Simon's Hardware Co. of St. Louis, Missouri, while we were attending the World's Fair in that City 1903.

Mr. Frey was in the China and Hardware business at that time and was a good customer of their.

At my death either sell it—or give it some *worthy* person.

All of my relatives from top to bottom own *Sterling* and lots of it.

Birdie H. Frey
October 7th, 1958."

Appellants contend the court erred in holding that said will disposed of the entire estate. We sustain that contention. Among Mrs. Frey's properties not expressly disposed of in her will were two houses and six lots and $30,000.00 worth of United States bonds. The testatrix, in the first six "items" of her will, after providing for payment of her debts and funeral expenses, made bequests "first" to her nieces and a nephew, her nearest relatives, to whom she was "quite close." By Item 7, she devised all her minerals to Mrs. Hickie, formerly the wife of a deceased son to whom she referred to as her "daughter." No children or grandchildren survived Mrs. Frey. By Item 8, Mrs. Frey expressly and in detail provided that her stock in the Stephenville bank should be held in trust and that from the income thereof $300.00 per year should be used for the upkeep of cemetery lots and $300.00 per year should be donated to two local churches and that the remainder of the income from said stock should be used to assist other local charities. This annual remainder of income from her bank stock to be used to assist other local charities amounted to approximately $2,250.00. She then provided for the administration of her estate, directed that the legacies to her nieces and nephew be paid without delay and that, if necessary, some of her bonds should be sold to pay their legacies. Then

came the paragraph which is the cause of this suit. It was not even given a number. Therein, she gave her piano to Mrs. Harris. She then stated that her "other belongings, dishes, crystal ware, silver, bric-a-brac" should be "distributed" by her "daughter", Mrs. Hickie, her "beloved" niece, Mrs. Guffey, and her niece, Mrs. Watson, and that any surplus thereof should be sold and the proceeds added to the charity fund.

It is appellees' contention, sustained by the court, that by the last part of the last sentence of said last, brief, unnumbered paragraph, Mrs. Frey devised and bequeathed all of her property not therein previously specifically devised or bequeathed to the Fort Worth bank in trust for the benefit of local charities. The chief property of the testatrix which was held to be thereby impliedly so devised and bequeathed in trust for local charities consists of two houses and six lots, having a value of approximately $15,000.00, and $30,000.00 worth of United States bonds, one-third of the value of her estate. (Apparently, also incidentally included would be about $500.00 worth of stock in Texas Power and Light Company and some cash in the bank.) The household goods were inventoried in 1961 at $500.00.

We agree with appellants that the paragraph giving Mrs. Harris her piano and stating that her other belongings, dishes, crystal ware, silver and bric-a-brac, should be distributed by said persons and any surplus sold and the proceeds added to the charity fund, cannot reasonably be interpreted to include said real estate and bonds. It is unreasonable to conclude that the testatrix would set out in detail the bequests to her nieces and nephew, whom she expressly wanted to "first" provide for; that she would plainly and in detail devise all of her minerals to Mrs. Hickie; would specifically and in great detail bequeath her bank stock in trust for local charities, provided for specific contributions from the income therefrom, provide specifically that the remainder of the income from the bank

stock, about $2,250.00 annually, should be used to assist local charities selected by the Stephenville bank, and then, mixed in with household effects of the value of about $500.00, consisting of dishes, crystal ware, silver and bric-a-brac, she would, in the same sentence, without mentioning bonds and real estate which constituted one-third of her estate, lump them off in the latter part of the last sentence of her will and add such a large sum to the charity fund, already specifically and in detail provided for. It is evident that such incidental provision for the sale of property, at the discretion of the distributors, and addition to the charity fund, meant the sale of articles such as those specifically named which might not be wanted by members of the family when they were distributed by Mrs. Hickie and the named two nieces.

Mrs. Frey evidently knew and appreciated the value of money. Her automobile at the time of her death in 1961, was a 1935 Chevrolet. She wanted a $400.00 funeral. She owed no one. If some small household item existed which no relative wanted, the three distributors could, if they so desired, sell it and the pittance thus obtained be added to the charity fund. We think that if this conclusion were not otherwise required it would be compelled by testatrix' language in her codicil. She was evidently thinking of the same things that she had mentioned in the paragraph in dispute when she, three months later, wrote her codicil. She told the history of her silverware, which had already been included in said important paragraph of her will, and told the same three persons to "either sell it or give it to some worthy person", at their discretion. She then said why her silverware was not to be distributed among her relatives, along with her "other belongings", as she had directed in the last paragraph of her will, that is, because all her relatives had a lot of silverware and wouldn't want it. Therefore, either give it to some worthy person outside the family, or sell it. She did not even bother to add in the codicil that the small amount

so obtained, if said distributors decided to sell the silverware, should be added to the charity fund. She did not mention the trustee bank, by name or otherwise, in either said last paragraph or codicil. Yet, if appellees' contention is correct, by the last sentence of the last, unnumbered, paragraph of her will she added more than $45,000.00, one-third of her estate, to that already specifically and in great detail bequeathed to the Fort Worth bank in trust for the benefit of local charities. Local charities already had $2,500.00 coming to them annually. She had already used three paragraphs of her will to make it clear what she was placing in trust for the benefit of local charities. She emphasized in the codicil what she had already said in the paragraph of her will in dispute. That the named three ladies should dispose of those trivial items as they thought best. She did not bequeath the dishes, crystal ware, silver and bric-a-brac to anybody, neither did she in her codicil bequeath the silverware to anyone. She was evidently saying to her "daughter", Mrs. Hickie, her "beloved" niece, Mrs. Guffey, and to her niece, Mrs. Watson, that they could distribute it as they saw fit and, if there were some thing no relative wanted, they could sell it and add that trifle to the charity fund. It was discretionary with the distributors. In the codicil she said that all of her relatives had lots of sterling and, therefore, they would not want it, so said distributors could at their discretion, either sell it or give it to some worthy person outside the family, simply because the relatives didn't need it. This was a repetition of the same idea expressed in the disputed paragraph. Of the household effects, what the relatives don't want, sell and give the trifle to charity.

Mrs. Frey was very charitable, but she was justly proud of her charity. If she had intended to add more than $45,000.00 to the gift to local charities she would have proudly so announced. That pride was evident in the three paragraphs where, in greater detail than anywhere else in the

will, she left her bank stock in trust for the benefit of local charities, most of which were to be selected by the Stephenville bank. It would be contrary to human nature for her to lump off in the last part of a sentence dealing with trivial household effects, United States bonds and real estate which constituted one-third of her estate, without mentioning them as the very valuable real estate and bonds she was, with pride, giving to local charities. Would she have specifically mentioned a few dollars worth of dishes, and the like, and not mention $45,000.00 worth of bonds and real estate? She was giving income from her property to local charities. She made no provision for investment of the large amount the sale of such things would bring for the benefit of local charities. If she had intended for them to go to local charities, it is more probable she would have considered that the income from United States bonds, real estate and electric light stock would be ideal for such a trust, and she would not have ordered them sold. She certainly did not intend for excess cash in the bank to be sold.

It is evident that, despite her charitable inclination, her first desire was to take care of her nearest relatives. She said so. In Item 1 she bequeathed certain legacies to her nieces and nephew "first." Following item 9 she provided that if the cash in the bank was insufficient to pay the legacies to her nieces and nephew, some bonds should be sold and those legacies "paid without any delay." Three persons very close to her, Mrs. Hickie, her "daughter", Mrs. Guffey, her "beloved" niece, and her niece, Mrs. Watson, were told to "distribute" her household effects. She told them to either sell the sterling silver or give it to some worthy person outside the family because her relatives had plenty of it. She didn't even give the items specifically named in the important paragraph in connection with her "other belongings" to anyone. She was satisfied that they would be properly "distributed" by the persons named. It would be more reasonable than appellees' contention to say that Mrs. Frey directed that all her "other belongings," those not specifically disposed of, were to be "distributed" by the three persons named.

We think the last paragraph of Mrs. Frey's will was not, nor was it intended as, a general residuary clause. We think it is evident that the word "surplus" in the bric-a-brac sentence referred to things of the same kind or character as those named, and not to those of an entirely different kind, character and value. It is inconceivable that Mrs. Frey, who had so carefully listed the gifts to each beneficiary and to local charities would come down to the bric-a-brac sentence, mention dishes, crystal ware, silver and bric-a-brac, and, without even starting a new sentence, merely use the word "surplus" to dispose of her major properties, such as two houses, six lots and $30,000.00 worth of United States bonds. She would not jump from bric-a-brac to real estate and bonds in one sentence, without even mentioning real estate and bonds. She would not jump from household effects of less than $500.00 in value to bonds and real estate worth more than $45,000.00, and constituting one-third of her estate, without even mentioning bonds and real estate. The rule of ejusdem generis "is a rule of almost universal application." Farmers' and Mechanics' National Bank v. Hanks, 104 Tex. 320, 137 S.W. 1120, 1123, 1124. Under that rule, where specific and particular enumerations of things are followed by general words, the general words are not to be construed in their widest extent but are to be treated as limited and applied only to things of the same kind and class as those mentioned. Stanford v. Butler, 142 Tex. 692, 181 S.W. 2d 269, 272. The rule has been applied in cases of this character. Ellis v. First National Bank of Dallas, Tex.Civ.App., 311 S.W.2d 916, (Ref. N.R.E.); Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S.W. 737, 51 L.R.A.,N.S., 268; Harris v. Strawbridge, Tex.Civ.App., 330 S.W.2d 911, (Ref. N.R.E.),

We recognize the presumption against partial intestacy, but that presumption does not authorize a court to make a new will, or to add to a testamentary disposition something which is not there. 95 C.J.S. Wills § 615, p. 831. "This presumption is but one of the factors to be considered in arriving at the intention of the testatrix as expressed in the will itself. It cannot be invoked to add to or to change the express language of a will. Kostroun v. Plsek, Tex.Com.App.1929, 15 S.W.2d 220." Huffman v. Huffman, 161 Tex. 267, 339 S.W.2d 885, 890. That presumption may be applied in construing a will "only where an intention to pass the whole estate is expressed in some form, and where the testator has failed to provide for the disposition of all of his property * * * the court cannot place a construction on the will not warranted by its language but the testator must be held to have died intestate as to such property." 95 C.J.S. Wills § 615, p. 839. Mrs. Frey's will did not, as is usual, contain a statement that she desired to dispose of all of her property while she was able to do so and an intention to pass the whole of her estate was not expressed. Mrs. Frey simply evidenced no intention, and made no attempt, to dispose of said real estate and bonds in her will. To guess that she so intended is to make a will for her. To further guess that she intended to add them to her specific, detailed gift to local charities violates the rule that her intention is to be deduced from the words she used. Since she did not dispose of them it is not material whether their omission was intentional or otherwise. In construing wills the courts must determine what a testator meant from the words used in his will "and may not redraft the will." Huffman v. Huffman, 161 Tex. 267, 339 S.W.2d 885, 889. See also Fain v. Fain, Tex.Civ.App., 335 S.W.2d 663, (Writ Ref.); Wolkewitz v. Wood, Tex.Civ.App., 216 S.W.2d 611; Engelke v. Schultze, Tex.Civ.App., 275 S. W.2d 158, (Writ Dis.); Salvation Army of Texas v. Ford, Tex.Civ.App., 256 S.W. 2d 953.

We conclude that the will did not dispose of the entire estate. The judgment is reversed and judgment is rendered for appellants.

WALTER, Justice (dissenting).

I respectfully dissent.

Paul Hickie and Naoma Hickie, individually and as executors of the estate of Birdie Hartsough Frey, deceased, filed this suit to construe her will.

Mrs. Frey died on July 1st, 1961, at the age of 86. Her holographic will, which she executed on July 17, 1958, and codicil, which is dated October 7, 1958, are as follows:

"I, Birdie Hartsough Frey, of the City of Stephenville, County of Erath, State of Texas, being of sound and disposing mind, memory and discretion, do hereby make and publish this, my last will and testament, hereby revoking and making void any provisions made at any time heretofore. I desire that all my just debts be paid as soon as it conveniently may be after my demise. (At this date I owe no one.) I desire that my funeral expenses may not exceed, four hundred dollars, if possible.

Item 1—I give and bequeath the following legacies to the several persons hereafter named, to my nieces and nephew first—

Item 2—To my niece Winnie Slaughter Rogers of Haines City, Florida, or her heirs, the sum of Seven Thousand ($7,000.-00) dollars.

Item 3—To my niece Elizabeth Slaughter Watson, Austin, Texas, or her heirs the sum of Seven Thousand ($7,000.00) dollars.

Item 4—To my niece Mary Jo Slaughter Townsend of Haines City, Florida, or her heirs, the sum of Seven Thousand ($7,000.-00) dollars.

Item 5—To my nephew Solomon Robert Slaughter of Texas City, Texas, or his heirs, the sum of Seven Thousand ($7,000.-00) dollars.

Item 6—To my beloved niece Isabella Hartsough Guffey, 301 Elm Cove, Abilene, Texas, the sum of Seven Thousand ($7,000.00) dollars. If she is not living at the time of my demise, I wish this sum to go to her husband, Theron Guffey, *my friend,* every ones friend. If he is not living, I want this sum to go to the Salvation Army, Dallas, Texas.

Item 7—I give, devise and bequeath to my beloved daughter Naoma Frey Hickie, *all* of my *Oil, Gas* or *other mineral rights* of *what ever nature,* and *wheresoever situated* —*all* interests, royalties or dividends accruing therefrom, forever.

Item 8—My stock in the Farmers First National Bank of Stephenville, Texas: (At this date consists of 95 shares)—I desire that these shares be held in trust by the Trust Department of the Fort Worth National Bank, Fort Worth, Texas, and that all profits accruing therefrom shall be used each year, as follows—

First $25.00 per month to be paid to a competent man for the proper care of my burial plots, situated in the East Memorial Cemetery of Stephenville, Texas—The W. H. Frey and Hartsough lots—The Capt. John A. Frey, Sr's family plots—My plot adjoining the W. H. Frey plot to the East, two spaces of which I have given to Mr. and Mrs. D. G. Hunnewell and the remaining spaces to Paul and Naoma Hickie.

Item 9—The remaining income from Bank Stock may be set up as a Birdie Hartsough Frey Memorial Fund (Because Naoma wanted it so identified) and *from this* fund I desire that the following donations be made yearly to the Bethel C. M. E. (Colored Methodist) Church of Stephenville, Texas, and the St. John Baptist Church (Colored) of Stephenville $150.00 on Easter Sunday, each year.

Item 9—The remainder from the income to be used to assist worthy local charities, this fund to be contributed at the discretion of the Board of Directors of the Farmers First National Bank of Stephenville, Texas.

Important, I desire that Paul and Naoma Hickie shall act as administrators of my Estate, *without Bond,* and that a reasonable percentage of the estate be used to reward them for their labor. If cash in the Bank is insufficient to pay the legacies to my nieces and nephew, I desire Government Bonds be sold and *that these legacies be paid without any delay.*

Extra Important—any beneficiary, contesting *any part* of this will, shall forfeit *all benefits* at once.

I desire that Leona Gray Harris receive my piano, her residence Ozona, Texas. My other belongings, dishes, crystal ware, silver, bric a brac to be distributed by Naoma Frey Hickie, Isabella Guffey, Elizabeth Watson—the surplus to be sold and the money added to Charity Fund.

Written this the 17th day of July, 1958

Birdie Hartsough Frey

Witness—Jack Henderson

Witness—Mrs. Jack Henderson

Witness—Miss Mary Jones

All of this Roger's Silver Ware was presented to me by The Simon's Hardware Co. of St. Louis, Missouri, while we were attending the World's Fair in that City 1903.

Mr. Frey was in the China and Hardware business at that time and was a good customer of their.

At *my death either sell it*—or give it some *worthy* person.

All of my relatives from top to bottom own *Sterling* and lots of it.

Birdie H. Frey
October 7th, 1958."

The executors called upon the court to answer the following question: "Are the Executors directed to sell all of the residue of the estate of Birdie Hartsough Frey and deliver the net proceeds, after all expenses, to the Fort Worth National Bank of Fort Worth, Texas, as trustee, said

proceeds to become a part of said trust-fund?" The court answered the question in the judgment as follows: "Said will directs the executors to sell all of the residue of the estate of Birdie Hartsough Frey and deliver the net proceeds after all expenses, to the said Fort Worth National Bank, Fort Worth, Texas, as trustee, said proceeds to become a part of said charitable trust fund, and the court specifically finds and holds that the will and codicil of said testatrix disposed of her entire estate and that she did not die intestate as to any portion thereof."

Mrs. Frey's heirs at law have appealed on one point of error as follows: The trial court erred in holding that the will "considered as a whole and read 'from its four corners'", disposed of the entire estate of the Testatrix.

Some of the rules to be followed in construing a will are as follows: "It is competent to admit extrinsic evidence to explain the intent of the testator by showing his situation in his relation to persons and things around him or by proof of the surrounding circumstances in order that the will may be read in the light of the circumstances in which he was placed at the time of making it. McDow v. Lund, Tex.Civ. App., 250 S.W.2d 247, ref.; Darragh v. Barmore, Tex.Com.App., 242 S.W. 714; Houston Bank & Trust Co. v. Lansdowne, Tex.Civ.App., 201 S.W.2d 834." Conway v. Estes, Tex.Civ.App., 346 S.W.2d 374.

"We must consider the will as a whole and give effect to every part where possible. It is presumed that the testatrix disposed of her entire disposable estate and that she desired to avoid partial intestacy. Kostroun v. Plsek, supra. Where a will is ambiguous or open to two constructions, that interpretation should be adopted which will prevent intestacy, since the fact that she made a will at all shows an intent not to die intestate. Ferguson v. Ferguson, 121 Tex. 119, 45 S.W.2d 1096, 79 A.L.R. 1163; Kuehn v. Bremer, Tex.Civ.App., 132 S. W.2d 295. The force of the positive

presumption against intestacy, otherwise stated, is that the one who insists upon the partial intestacy must be in a position to show that the will clearly intended that the testator should die intestate. Unless we are pointed to something which clearly expresses or necessarily implies intestacy, the presumption of testacy will prevail. Boone v. Stone, Tex.Civ.App., 142 S.W.2d 936; Ellet v. McCord, Tex.Civ.App., 41 S.W.2d 110; 44 Tex.Jur., Wills, § 148. This presumption is said to be particularly strong when the subject of the gift is the residuary estate. Note, 17 A.L.R.2d 654–5. Based on this presumption, we start off with the rule that the testatrix died testate until the contrary is demonstrated." Urban v. Fossati, Tex.Civ.App., 266 S.W.2d 397, (Writ Ref. N.R.E.).

A fair summary of Mrs. Hickie's testimony is as follows: She was first married to Earl Leofflin Frey, one of testatrix' sons. He died in 1941. She is now married to Mr. Paul Hickie, Chairman of the Board of the Farmers First National Bank. She continued to have cordial relationship with Mrs. Frey. She and Mrs. Frey owned stock in the bank and owned a common interest in the business. Mrs. Frey's other son died in 1933. She had no grandchildren, "and her lack of other children and no one in the town that was close to her made a moral responsibility for me to maintain a relation that was very pleasant for both of us." Mrs. Frey had one brother, deceased, leaving one child, one of the appellants herein. She also had one sister, now deceased, leaving three daughters and one son, who are also appellants. Mrs. Frey only had an elementary school education. At the time she wrote her will she was apparently in good health. Mrs. Frey didn't spend much "on herself but she gave enormously to charity." She was a member of the Mormon Church. She donated money to all churches and faiths and to charities of all kinds.

The residue of Mrs. Frey's estate consists of approximately $30,000.00 in United States bonds; two houses and four lots

valued at $15,000.00 and two lots of undetermined value and a small amount of cash in the bank and some stock in Texas Power and Light Company. Appellants contend that Mrs. Frey simply forgot to dispose of the residue. It is difficult to believe that she forgot her bonds because in item 9 she provided: "If cash in the Bank is insufficient to pay the legacies to my nieces and nephew, I desire Government Bonds be sold and *that these legacies be paid without any delay.*" Item 7 indicates that she was also thinking about some of her real estate. Mrs. Frey demonstrated her affection for her nieces and nephew when she bequeathed to each of them an equal amount. Apparently this was the maximum of her estate which she intended for them to receive.

Appellants contend that the word "surplus" in the bric-a-brac sentence has reference to the things of the same kind and character under the doctrine of ejusdem generis. We agree that this portion of the will is susceptible to that construction. Under such a construction the word "surplus" would mean belongings such as dishes, crystal ware, silver and bric-a-brac. It would necessarily follow from such a construction that testatrix died intestate as to the residue of her estate.

In Rogers v. Nixon, Tex.Civ.App., 275 S.W.2d 197, at page 200 (Writ Ref.), the court said: "The second rule *is that as it is presumed the testator desired to make a full disposition of his estate, a will should be construed to prevent partial intestacy,* if such construction is reasonably compatible with the words employed by the testator. Briggs v. Peebles, 144 Tex. 47, 188 S.W.2d 147; 44 Tex.Jur. 707, Wills, § 148." Would it be reasonably compatible with the words "—*the surplus to be sold and the money added to Charity Fund,*" as used in the last clause of the will to construe them as meaning that the testatrix intended thereby for such words to constitute the residuary clause of her "last will and testament?" Of course, *it is* impossible for us to know exactly what the testatrix' intentions were when she wrote these words. We can only say the words are subject to the construction placed upon them by the appellants, but they are, likewise, subject to the construction placed upon them by the trial court. That interpretation should be adapted which will prevent partial intestacy.

Appellants have failed to establish that partial intestacy was intended by Mrs. Frey "in her last will and testament." Urban v. Fossati, 266 S.W.2d page 397, (Writ Ref. N.R.E.); Glover v. Glover, Tex.Civ.App., 331 S.W.2d 804.

I would affirm the judgment.